SPRINGWOOD ASSOCIATES, d/b/a Elmwood Health Care Center, Plaintiff-Appellant, v. HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

Fourth District   No. 4—94—0370

Argued December 14, 1994.—Opinion filed March 3, 1995.—Rehearing denied March 31, 1995.

Daniel Maher (argued), of Springfield, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and William K. Blanchard, Assistant Attorney General (argued), of counsel), for appellees Department of Public Health, Health Facilities Planning Board, and John Lumpkin.

Kevin N. McDermott (argued), of Springfield, for other appellees.

JUSTICE COOK delivered the opinion of the court:

In November 1993, the Illinois Health Facilities Planning Board (Board) approved the application of defendant First CareAmerica Corporation (First CareAmerica) for a certificate of need to add 28 skilled nursing beds to its Collinsville Care Center, a 122-bed skilled nursing facility located in Collinsville, in Madison County. Plaintiff Springwood Associates Limited Partnership (Springwood), operator of the Elmwood Health Care Center located in Maryville in Madison County, then filed a complaint for administrative review of the Board's decision. The circuit court affirmed, and this appeal followed. We find the Board's decision was arbitrary and capricious and therefore reverse.

On August 27, 1993, First CareAmerica filed its application. On September 20, 1993, pursuant to the Illinois Health Facilities Planning Act (Act) (20 ILCS 3960/1 *et seq.* (West 1992)), Springwood and Eden Village, which operates a facility in Edwardsville, Illinois, each requested a public hearing on the proposed project. Springwood filed written objections. Objections were also filed by the Lincoln Home, Inc., located in Belleville, Illinois, University Manor, located in Edwardsville, and Eden Village, all arguing the additional beds were not needed because of excess beds available in surrounding counties. Springwood also objected the application did not meet several of the general review criteria.

A public hearing was held October 6, 1993, at which five people offered oral testimony, and five offered written testimony, including the objections listed above which were included in the record of the hearing. In October 1993, the Illinois Department of Public Health (Department) issued a report on the proposed project which found it to be in accordance with the review criteria established under parts 1110 and 1120 of title 77 of the Illinois Administrative Code (Code) (77 Ill. Adm. Code pts. 1110, 1120 (1992-93)). First CareAmerica's application was considered at the October 28, 1993, meeting of the Board, at which time the Board voted to approve the application. The Board adopted the Department's report as its findings.

■ Persons adversely affected by final decisions of the Board may have such decisions reviewed by the circuit court, pursuant to the provisions of the Administrative Review Law (735 ILCS 5/3—101 *et*

*seq.* (West 1992)). (20 ILCS 3960/11 (West 1992).) On review, an administrative agency's findings and conclusions of fact are held to be *prima facie* true and correct. (735 ILCS 5/3—110 (West 1992); *Carver v. Bond/ Fayette/ Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 355, 586 N.E.2d 1273, 1276-77; *Novosad v. Mitchell* (1993), 251 Ill. App. 3d 166, 173, 621 N.E.2d 960, 965.) An administrative decision should not be overturned unless the agency exercised its authority in an arbitrary and capricious manner or the decision is contrary to the manifest weight of the evidence. (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085, 1088; *Novosad*, 251 Ill. App. 3d at 173, 621 N.E.2d at 965.) The judgment of the circuit court entered in administrative review is reviewable by appeal as other civil cases. 735 ILCS 5/3—112 (West 1992).

■ The Act establishes a procedure designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities. (20 ILCS 3960/2 (West 1992).) The Act created the Board. (20 ILCS 3960/4 (West 1992).) No person may construct, modify, or establish a health care facility without obtaining a permit or exemption from the Board. (20 ILCS 3960/5 (West 1992).) Applications for a permit or exemption are to be made on forms provided by the Board and are to contain such information as the Board deems necessary. Applications are to include affirmative evidence upon which the Board may make its decision approving or denying a permit or exemption. 20 ILCS 3960/6 (West 1992).

■ The Department has the power, with prior approval of the Board, to prescribe rules, regulations, standards, criteria, procedures, or reviews required to carry out the provisions and purposes of the Act. Such rules and regulations, *et cetera*, may vary according to the purpose for which a review is conducted, and the type of project being reviewed. (20 ILCS 3960/12(1) (West 1992).) The Department also has the power to develop criteria and standards for health care facilities planning, conduct statewide inventories of health care facilities, and to develop health care facility plans, which upon adoption by the Board are to be utilized in the review of applications for permits under the Act. 20 ILCS 3960/12(4) (West 1992).

■ The Board is to approve and authorize the issuance of a permit if it finds (1) the applicant is fit, willing, and able to provide a proper standard of health care service for the community with particular regard to the qualification, background, and character of the applicant; (2) economic feasibility is demonstrated; (3) safeguards are provided which assure the proposed project is consistent with the public interest; and (4) the proposed project is consistent with the

orderly and economic development of such facilities and is in accord with standards, criteria, or plans of need adopted and approved pursuant to section 6 of the Act. 20 ILCS 3960/6 (West 1992).

The Board argues the application and evidence introduced at the public hearing satisfied all necessary criteria for approval of the application. The Board also contends the deficiencies cited by Springwood would not be fatal to the application in any event, since they focus only on the regulations.

■ Generally, administrative agencies must follow their own rules as written, without making *ad hoc* exceptions or departures therefrom in adjudicating. (*Mattoon Community Unit School District No. 2 v. Illinois Educational Labor Relations Board* (1990), 193 Ill. App. 3d 875, 881, 550 N.E.2d 610, 614.) When an administrative agency has adopted rules and regulations under its statutory authority for carrying out its duties, the agency is bound by those rules and regulations and cannot arbitrarily disregard them. (*Union Electric Co. v. Department of Revenue* (1990), 136 Ill. 2d 385, 391, 556 N.E.2d 236, 239; *Heavner v. Illinois Racing Board* (1982), 103 Ill. App. 3d 1020, 1025, 432 N.E.2d 290, 294; see also *Holland v. Quinn* (1978), 67 Ill. App. 3d 571, 574, 385 N.E.2d 92, 94; *Service v. Dulles* (1957), 354 U.S. 363, 1 L. Ed. 2d 1403, 77 S. Ct. 1152.) Therefore, if the Board's approval of First CareAmerica's application was contrary to the duly promulgated regulations, the approval must be reversed.

■ Springwood argues First CareAmerica failed to provide "market studies of the area indicating the characteristics of the population to be served" by the proposed additional beds as required by the Board's regulations. (77 Ill. Adm. Code § 1110.230(a)(1) (1992-93).) First CareAmerica counters that although it did not provide any market studies, it did provide evidence of a market study indicating 95% of its current patients were from Madison County, and a record of inquiries from potential patients which showed 82% of 61 inquiries received during a 12-month period were from Madison County residents. The Board also notes the instructions contained in the application require the applicant to submit only evidence, not actual market studies.

With regard to the Board's position, we note that the regulations must control in the event of a conflict between the regulations and the application instructions. The regulations have the force and effect of law (*Union Electric*, 136 Ill. 2d at 391, 556 N.E.2d at 239); the application and instructions do not. The application and instructions merely represent the Board's interpretation of the information which it needs in order to determine the need for a proposed project. While such an interpretation is entitled to some deference, it is not binding

on a court. Further, an agency interpretation cannot expand or limit the scope of the relevant statute. (*Van's Material Co. v. Department of Revenue* (1989), 131 Ill. 2d 196, 202-03, 545 N.E.2d 695, 699.) The regulation in question here required "market studies of the area indicating the characteristics of the population to be served." (77 Ill. Adm. Code § 1110.230(a)(1) (1992-93).) This is not the same as a memo of the facility's own internal experiences. Other interested parties cannot easily question the facility's own internal reports. The fact that many of a facility's present patients are from a given area does not necessarily predict the future population of the facility.

■ Springwood next argues First CareAmerica's application failed to meet the staffing review criterion since (1) no letters of verification from other health facilities and organizations in the area regarding an adequate supply of manpower to staff the proposed facility were provided, and no manpower studies were provided (77 Ill. Adm. Code § 1110.230(c)(1) (1992-93)); (2) no evidence that less than 20% of area facilities had been cited for staffing deficiencies by the Department in its licensure inspections over the last two years was provided (77 Ill. Adm. Code § 1110.230(c)(2)(A) (1992-93)); and (3) no documentation was provided that required staffing levels under applicable licensure and titles XVIII and XIX certification would be met (77 Ill. Adm. Code § 1110.230(c)(2)(B) (1992-93)).

The Board points out letters of verification are not an absolute requirement of the regulations, but are listed as an item which *should* be included as documentation. Likewise, market studies on manpower are not required, but any surveys done by other health facilities and organizations in the area on manpower availability should be included as documentation. (77 Ill. Adm. Code § 1110.230(c)(1) (1992-93).) The Board and First CareAmerica argue the evidence submitted is adequate documentation of a sufficient manpower supply to staff the additional beds. This evidence included a statement First CareAmerica had an active file of 87 applications for various positions at its Collinsville facility and had contact with the local health department, which did not reveal any serious staffing deficiencies from area long-term care facilities. First CareAmerica did provide a letter from the Department indicating the proposed staffing was in compliance with licensure requirements. This evidence is not sufficient to comply with the regulations outlined above.

■ Springwood also argues First CareAmerica failed to establish the absence of two or more serious violations in facilities it operates or has operated in the last five years, and did not provide an operational history disclosing all citations for operational deficiencies, any suspension or termination action, any contested licensure

action, as well as the outcome of all such actions. (77 Ill. Adm. Code § 1110.230(d) (1992-93).) The Board contends First CareAmerica did comply with the requirements contained in the application, although those requirements differed slightly from the regulations. The application did contain as an attachment copies of the two most recent licensure inspections of the Collinsville facility, which did not report any serious violations. Each of the reports contained citations for administrative warnings. These reports would supply the information required by the regulations, but the application directions only require the submission of the latest two reports, rather than the last five years as required by the Code (77 Ill. Adm. Code § 1110.230(d) (1992-93)). Further, First CareAmerica disclosed as directed on its application that it operated two other facilities. The application did not request any operational history in regard to these facilities and none was provided. However, the regulations direct that documentation of the absence of two or more serious violations within the past five years must be shown for any facility operated within that time. 77 Ill. Adm. Code § 1110.230(d) (1992-93).

Given the numerous differences between the documentation required by the regulations and that which the Board requested in its application, and upon which its approval of First CareAmerica's application was based, we conclude the Board's action with regard to the application was arbitrary and capricious for failing to follow its own regulations. See *Heavner*, 103 Ill. App. 3d at 1025, 432 N.E.2d at 294; *Holland*, 67 Ill. App. 3d at 574, 385 N.E.2d at 94; *Service*, 354 U.S. at 388, 1 L. Ed. 2d at 1418, 77 S. Ct. at 1165.

Springwood also argued the application did not address alternatives to the proposed project since it did not address placement of prospective patients in the St. Clair County area. (77 Ill. Adm. Code § 1110.230(e) (1992-93).) The application did discuss several alternatives to the proposed project, including construction of a new facility, retaining the current number of beds, lease, purchase or other utilization of other facilities, and construction of apartment units for the elderly, but it was determined none of these alternatives would effectively meet the identified need for additional nursing beds in Madison County.

The alternatives addressed did meet the requirements of the regulations. (77 Ill. Adm. Code § 1110.230(e) (1992-93).) No language in the Act or the regulations requires consideration of placement of prospective users of a proposed facility outside the planning area (here the county) in which the facility will be physically located. However, we are troubled by the Board's strict reliance on geographic planning areas, especially in a case such as this where the proposed facility or addition is near the border of another planning area.

First CareAmerica and the Board argue the Board is not required by its regulations, or by logic and common sense, to consider the availability of excess beds in another county in ruling on an application. Pursuant to the stated purpose of the Act to establish a procedure to promote planning for and development of health care facilities needed for comprehensive health care in areas where the health planning process has identified unmet needs (20 ILCS 3960/2 (West 1992)), the Board has established 11 "Health Service Areas" (HSAs), of which HSA XI is made up of Madison, St. Clair, Clinton and Monroe Counties. (77 Ill. Adm. Code § 1100.220 (1992-93).) "Planning Areas" are also established by the Board "as a basis for the collection, organization, and analysis of information to determine health care resources and needs and to serve as a basis for planning." (77 Ill. Adm. Code § 1100.220 (1992-93).) Planning areas are geographic areas deemed appropriate by the Board for evaluating the need for a particular service. Factors utilized in developing planning areas are (1) the nature of the service, (2) patient migration, (3) referral patterns, (4) socioeconomic patterns, (5) political and geographic boundaries, and (6) population. (77 Ill. Adm. Code § 1100.510(c) (1992-93).) The Board has established St. Clair and Madison Counties as separate planning areas with regard to the calculation of the need for health care facilities within each county. The Board argues there was nothing improper in making a determination that the needs of the two counties for health care facilities should be assessed independently of each other, and it was therefore not arbitrary and capricious to consider only the bed need for Madison County in ruling on the application.

While an agency's interpretation of a statute it is charged with enforcing is not binding on a court, that interpretation is entitled to some measure of deference. (*Van's*, 131 Ill. at 202-03, 545 N.E.2d at 699.) While we recognize the Board must have some discretion in determining planning areas, the arbitrary use of county lines may prevent the objectives of the Act from being achieved when a proposed facility is to be located very near such a line. Where services or facilities similar to those proposed in a permit application are available in the immediate area, although across a political boundary, the existence of such services or facilities could influence the desirability and practicality of adding a new facility or expanding an existing facility. An agency decision has been held to be arbitrary and capricious where it failed to consider an important aspect of a problem. (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 505-06, 524 N.E.2d 561, 581.) However, as we reverse on other grounds, we need not consider whether it was improper to establish Madison and St. Clair Counties as separate planning areas.

For the foregoing reasons, we reverse the decision of the circuit court upholding the Board's approval of First CareAmerica's application.

Reversed.

LUND and STEIGMANN, JJ., concur.