ACCESS CENTER FOR HEALTH, LTD., Plaintiff-Appellant, v. HEALTH FACILITIES PLANNING BOARD *et al.*, Defendants-Appellees.

Second District No. 2—95—1140

Opinion filed August 12, 1996.

Andrew J. Creighton, Michael P. Myers, and Allyson Bouldon, all of Des Plaines, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Cacilia Reich Masover, Assistant Attorney General, of counsel), for appellees Department of Public Health and Illinois Health Facilities Planning Board.

Brian S. Hucker and Terry Darden, both of McDermott, Will & Emery, of Chicago, for appellees Hinsdale Hospital and Hinsdale Surgical Center, Inc.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Access Center for Health, Ltd., appeals from an order of the circuit court of Du Page County that confirmed a decision of the Illinois Health Facilities Planning Board (Board). The Board approved the application of an ambulatory surgical treatment center (ASTC) for a permit, known as a certificate of need (CON), to relocate the center.

Defendants, Hinsdale Surgical Center, Inc. (Hinsdale Surgical), which operates the ASTC, and Hinsdale Hospital (Hospital), with which Hinsdale Surgical is affiliated, submitted the application for the CON to the Board as coapplicants. We will refer to Hinsdale Surgical and the Hospital collectively as Hinsdale. Plaintiff's complaint for administrative review named as defendants Hinsdale Surgical, the Hospital, the Board, and the Illinois Department of Public Health (Department).

Plaintiff operates a limited service medical/surgical facility providing abortions. Plaintiff's facility is located in the same health services area as Hinsdale Surgical's facility. On October 22, 1993, plaintiff filed its own application for a CON with the Board. Plaintiff sought permission to begin operating an ASTC. Plaintiff proposed to

modify and expand its existing facility to provide medical services in addition to abortions.

On January 13, 1994, the Board denied plaintiff's application for a CON on the ground, *inter alia*, of excess surgical capacity in the health services area. The Board subsequently reconsidered the matter and denied plaintiff's application for a second time. After an administrative hearing which supported the Board's decisions, the Board denied plaintiff's application for a final time on December 4, 1994.

On October 28, 1993, Hinsdale filed its application for a CON with the Board. Hinsdale sought permission to relocate an existing ASTC operated by Hinsdale Surgical. The relocated ASTC would be about two miles northeast of the existing facility and about one-half mile farther away from the Hospital than the existing facility. The estimated cost to relocate the facility was $3,325,154.

Hinsdale had determined that it was necessary to relocate after the Department found fire safety deficiencies in Hinsdale's existing facility. In Hinsdale's view, it was necessary to relocate despite its landlord's apparent willingness to renovate the existing facility. Hinsdale concluded that no amount of renovation could correct all of the fire safety deficiencies in its existing facility.

Hinsdale's landlord, Clay Venture, intervened in the circuit court proceedings. During the circuit court proceedings, Clay Venture took the position that it could cost-effectively renovate Hinsdale's existing facility to correct the safety deficiencies. However, Clay Venture has not appealed from the circuit court order and is not a party to this appeal.

On June 12, 1994, pursuant to the Illinois Health Facilities Planning Act (Planning Act) (20 ILCS 3960/1 *et seq.* (West 1994)), plaintiff requested a public hearing regarding Hinsdale's proposed relocation. On June 30, 1994, the Department conducted a public hearing on the matter. A representative for plaintiff attended the public hearing. Plaintiff also presented written objections to Hinsdale's application. Plaintiff objected to Hinsdale's application on the basis of the Board's prior denials of other applications for a CON, including plaintiff's. Plaintiff pointed out that the Board had denied these applications on the grounds of underutilization of surgical capacity in the health services area.

On July 28, 1994, the Board held a meeting. At the meeting, the Board addressed Hinsdale's application for a CON. The Board had before it Hinsdale's application, a report regarding the public hearing, and a report prepared by the Department entitled "State Agency Report." The State Agency Report consisted of two main parts. In

one of the parts, the Department evaluated Hinsdale's application with respect to various financial review criteria set out in section 1120 of title 77 of the Illinois Administrative Code (the Code) (77 Ill. Adm. Code § 1120 (1994)). In the State Agency Report, the Department reported that Hinsdale's project was in conformance with the provisions of section 1120.

In the other part of the State Agency Report, the Department evaluated Hinsdale's application with respect to 13 general review criteria set out in section 1110 of title 77 of the Code (77 Ill. Adm. Code § 1110 (1994)). In the State Agency Report, the Department reported that Hinsdale's proposed project appeared to be in conformance with 10 of the 13 general review criteria. The Department also reported that Hinsdale's proposed project did not appear to conform with three of the criteria. These criteria were: (1) need assessment; (2) alternatives; and (3) need for the project. In the report, the Department summarized its findings as to the section 1110 criteria by stating that "the proposed project does *not* appear to be in conformance with the provisions of part 1110." (Emphasis in original.)

At the Board meeting that addressed Hinsdale's application, a representative of the Department, Michael Copelin, spoke regarding the review criteria. Copelin stated:

"The [Department's] analysis of this project found three criteria for which a positive evaluation could not be made. First, under criterion 1110.1540.e., Need Assessment, it appears that there is adequate access to AST services within 30 minutes travel time to ensure that patients could obtain care with or without this facility. While it appears that the existing facility must be modernized to stay in conformance with licensure standards and it may be necessary to relocate to meet these standards, it does not appear that the applicant has documented that the other 23 outpatient surgery programs in the area could not handle the applicant's workload.

Second, under criterion 1110.230.e., Alternatives, it appears that the least costly alternative is to utilize other existing programs in the area to absorb the applicant's workload.

And finally, under criterion 1110.230.f., Need for the Project, it does not appear that the applicant has documented that the proposed facility is needed to serve the residents of the planning area."

After Copelin's statement, another Department representative, Peter Kaess, spoke. Kaess stated, "We've made a positive finding, Madam Chairman."

Representatives from Hinsdale then addressed the Board. Jorge

Heyde, a vice-president of the Hospital, spoke briefly. He stated that Hinsdale's project was important not only to Hinsdale but also to the health system in the Hinsdale community because it offered an integrated health care delivery system that met patient and community needs for high quality, cost-efficient surgical services.

Hinsdale Surgical's administrator and nursing supervisor, Judy McCammon, then addressed the Board at some length. McCammon stated the following. Hinsdale Surgical was one of the first ASTCs established in Illinois and has consistently provided state-of-the-art service in a cost-effective and timely manner. Because of Hinsdale Surgical's affiliation with the Hospital, Hinsdale Surgical can stay on the leading edge of health care while giving quality care as a low-cost alternative to hospital care.

McCammon further stated the following. Hinsdale Surgical provides certain ophthalmology services not available at surrounding surgical centers. Hinsdale Surgical does not refuse service to any patient regardless of ability to pay and has provided free services to patients who would otherwise be unable to obtain treatment in a timely manner. Hinsdale Surgical is in discussion with representatives from the Illinois Department of Public Aid to develop a private program aimed at including surgical centers as providers for Illinois Department of Public Aid recipients. Hinsdale Surgical provides a disproportionate amount of care to the elderly and its Medicare utilization rate is 48%. These patients receive high quality care comparable to a hospital with less expense.

Board members then asked Hinsdale Surgical's representatives questions. The representatives' answers were as follows. Hinsdale Surgical has been in existence since 1976. In 1993, Hinsdale Surgical changed from a for-profit facility to a not-for-profit facility. The doctors, patients, and procedures at Hinsdale Surgical will all remain the same if Hinsdale Surgical is allowed to relocate. Hinsdale Surgical will not increase the number of operating rooms in its facility if allowed to relocate.

A Board member asked the Hinsdale Surgical representatives if they had "looked into working with the 23 other facilities that are around you?" McCammon replied that Hinsdale Surgical considered its primary service area as Hinsdale and the surrounding communities and that many of the 23 other facilities in question were outside Hinsdale Surgical's primary service area. McCammon stated that many of Hinsdale Surgical's patients could not travel the distances that would be required to reach some of the 23 other facilities. Of the other facilities in Hinsdale Surgical's primary service area, McCammon stated that one was as well utilized as Hinsdale Surgical and

therefore could not take Hinsdale Surgical's patients. McCammon also stated that the other facilities in Hinsdale Surgical's primary service area "are privately owned single specialty and/or if they're multispecialty, they are owned by either physician entrepreneurs or other companies that are not interested in joint ownership at this point." A Board member asked McCammon whether Hinsdale Surgical was needed. McCammon replied that there must be a need for Hinsdale Surgical because its service numbers never decreased even though other surgical centers opened in the area.

During the Board meeting, there was also considerable discussion as to whether Hinsdale Surgical could stay in its existing building if the building was renovated. The Hinsdale Surgical representatives consistently stated that it was not possible for Hinsdale Surgical to remain in its current building. The reasons included: the extremely remote likelihood of satisfying the licensure standards by renovating the existing building; and, even if the standards could be met by renovation, the need for Hinsdale Surgical to shut down for an indeterminate period while the renovation proceeded.

After questioning the Hinsdale Surgical representatives, the Board members voted on Hinsdale's application for a CON. The 12 Board members present voted unanimously to approve Hinsdale's application. On August 1, 1994, the Board issued a letter to Hinsdale indicating the Board's approval of its application.

On August 31, 1994, plaintiff filed its complaint for administrative review in the circuit court. Plaintiff's complaint sought the reversal of the Board's decision to approve Hinsdale's application. The complaint claimed that the Board's decision failed to meet the Board's published criteria for need and therefore was contrary to the Planning Act and Board rules, was an abuse of discretion, was arbitrary and capricious, and was not supported by substantial evidence.

On May 16, 1995, the circuit court entered an order affirming the Board's decision. The order stated that it was based on the reasons stated in the record, including the court's finding that the Board's decision was not against the manifest weight of the evidence.

On June 13, 1995, plaintiff filed a motion to reconsider. On August 24, 1995, the circuit court denied plaintiff's motion to reconsider. Plaintiff's timely appeal followed.

On appeal, plaintiff again takes the position that the record does not support the Board's decision. Plaintiff focuses primarily on the State Agency Report. Plaintiff asserts that the Board's approval of Hinsdale's application for a CON in the face of the State Agency Report which found that Hinsdale's proposed project was not in conformance with three review criteria was arbitrary and capricious.

■ To support its claim that the Board's decision was arbitrary and capricious, plaintiff cites *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462 (1988). In *Greer*, our supreme court set out guidelines for determining whether an action by an administrative agency was arbitrary and capricious. The court stated:

"While it is probably not possible to enumerate all the kinds of acts or omissions which will constitute arbitrary and capricious conduct, the following guidelines apply. Agency action is arbitrary and capricious if the agency: (1) relies on factors which the legislature did not intend for the agency to consider; (2) entirely fails to consider an important aspect of the problem; or (3) offers an explanation for its decision which runs counter to the evidence before the agency, or which is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. (*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.* (1983), 463 U.S. 29, 43, 77 L. Ed. 2d 443, 458, 103 S. Ct. 2856, 2866-67.) While an agency is not required to adhere to a certain policy or practice forever, sudden and unexplained changes have often been considered arbitrary. (See 2 C. Koch, Administrative Law & Practice § 9.6, at 101 (1985).) The standard is one of rationality. The scope of review is narrow and the court is not, absent a 'clear error of judgment' (*Citizens to Preserve Overton Park, Inc. v. Volpe* (1971), 401 U.S. 402, 416, 28 L. Ed. 2d 136, 153, 91 S. Ct. 814, 823-24), to substitute its own reasoning for that of the agency." *Greer*, 122 Ill. 2d at 505-06.

In plaintiff's view, the Board's decision was arbitrary and capricious because it violated each of the three *Greer* guidelines. We will consider each guideline in turn.

Plaintiff contends that the Board's decision was arbitrary and capricious under the first *Greer* guideline because the Board relied on a factor that the legislature did not intend the Board to consider. The alleged factor was the personal need of Hinsdale to relocate.

Plaintiff points to the comments in the State Agency Report regarding the "need for the project" review criterion. In its appellate brief, plaintiff quotes part of the comments that stated that "it appears that the co-applicants have documented a personal need for the proposed facility, but have not documented a need for the proposed facility within the planning area by showing that insufficient services exist to meet the needs of the planning area population." Plaintiff argues that the part of the comments that it quoted shows that the Board based its decision on a factor that the legislature did not intend the Board to consider.

■ We note that plaintiff ignores another part of the comments in

the State Agency Report regarding the "need for the project" criterion. This part of the comments states:

"One specific that this criterion requires is that the need for the project be based upon historical high utilization of area providers. This requirement can not [*sic*] be currently documented because there are several facilities within 30 minutes travel time of the applicant which have been approved, but are not yet in full operation or have not been in operation for a 12 month period."

At its July 28, 1994, meeting, the Board considered Hinsdale's application. A Board member asked one of Hinsdale's representatives, McCammon, whether consideration was given to working with other facilities. McCammon replied that many of Hinsdale's patients could not travel the distances to some of the other facilities. McCammon also stated that, for various reasons, including full utilization of at least one other facility, the other facilities that were near Hinsdale's facility could not service Hinsdale's patients.

Thus, the Board had before it evidence tending to show a need for the project in addition to Hinsdale's personal need to relocate. The additional need was to continue servicing Hinsdale's patients who otherwise would face substantial difficulty in obtaining service. The Board could have considered this evidence in reaching its decision. The Board could also have noted the comment in the State Agency Report regarding the impossibility of determining the utilization rate of area providers.

Based on this record, plaintiff has not shown that the Board made a clear error of judgment under the first *Greer* principle by relying on a factor that the legislature did not intend it to consider. Accordingly, we cannot say that the Board's decision was arbitrary and capricious under the first *Greer* principle.

Plaintiff next contends that the Board's decision was arbitrary and capricious under the second *Greer* principle, the failure to consider an important aspect of the problem. Plaintiff asserts that the Board violated the second *Greer* principle by failing to consider the issue of need for the project. Plaintiff describes need as the underlying basis for the Board's function and existence.

In its appellate brief, plaintiff again quotes from the State Agency Report. Plaintiff's brief, at page 22, states:

"The State Agency Report made the following findings concerning need:

This relocation and re-establishment of an existing ASTC will not create a maldistribution of services, but it appears to continue an existing maldistribution in light of the excess surgical capacity existing within the planning area.

It appears, that, based upon the existing excess surgical capacity in the planning area, the best alternative is to utilize other area facilities to absorb the applicant's workload."

Plaintiff asserts that the Board ignored these adverse findings on need. Plaintiff argues that in doing so the Board failed to consider an important aspect of the problem.

■ We note that, contrary to plaintiff's assertions, the first paragraph of the findings quoted by plaintiff from the State Agency Report does not concern the "need assessment" criterion in the State Agency Report. Rather, the first paragraph is from the Department's comments in the State Agency Report concerning a criterion entitled "location." The Department found that Hinsdale's project was in conformance with the location criterion. Consequently, we need not consider the first paragraph quoted by plaintiff.

The second paragraph of the quoted findings again essentially raises the issue of utilizing other facilities in the area. As seen above, Hinsdale presented evidence to the Board tending to show that Hinsdale's patients were unlikely to utilize other facilities. Based on this evidence, the Board could have determined that the best alternative was not to utilize other facilities in an attempt to absorb Hinsdale's patients. Thus, plaintiff has not shown that the Board would have made a clear error in judgment if it chose not to follow the Department's finding. Accordingly, we cannot say that the Board's decision was arbitrary and capricious under the second *Greer* principle.

Additional support for our conclusion comes from section 1130.660 of title 77 of the Code. Section 1130.660 provides, in relevant part, that the "failure of a project to meet one or more review criteria, as set forth in 77 Ill. Adm. Code 1110, 1230 or 1240 shall not prohibit the issuance of a permit." 77 Ill. Adm. Code § 1130.660 (1996).

Plaintiff attacks the validity of section 1130.660 insofar as it gives the Board unrestricted license to grant a CON free of statutory and regulatory standards and without evidentiary explanation in the record. However, as seen above, the record in this case contains an evidentiary basis for the Board to have decided to grant the permit to Hinsdale in this case even though the Department found and reported in the State Agency Report that Hinsdale's project appeared not to conform with certain review criteria. Accordingly, the Board had the authority, based on section 1130.660 of the Code, not to follow the Department's findings with respect to all the review criteria.

Plaintiff next contends that the Board's decision was arbitrary and capricious because it violated the third *Greer* principle in that the decision ran counter to the evidence before the Board. Plaintiff

repeats its assertion that the Board ignored the Department's findings as recorded in the State Agency Report on the issue of need. Plaintiff also again characterizes the issue of need as the primary consideration under the Planning Act. Plaintiff then argues that the Board's rejection of the Department's findings without explanation shows that the Board's decision was against the manifest weight of the evidence.

Defendants respond that under both the Planning Act and the Code the Board is only required to explain a decision when the decision is to deny an application. Defendants also point to case law which holds that where, as here, the testimony before an administrative agency is preserved for review in the record, specific findings of fact are not required for judicial review. See *Mahonie v. Edgar*, 131 Ill. App. 3d 175, 178 (1985).

■ We agree with defendants. Section 10 of the Planning Act requires the Board to "specify[ ] its findings and conclusions" only when it has taken negative action. 20 ILCS 3960/10 (West 1994). Likewise, section 1130.680 of title 77 of the Code requires the Board to specify its "findings of fact and conclusions of law" only if the Board denies an application. 77 Ill. Adm. Code § 1130.680 (1996).

In this case, the Board did not take negative action or deny an application. The Board's decision was to approve Hinsdale's application for a CON. Therefore, the Board was not required to specify its findings and conclusions, and we cannot say that the Board's failure to do so showed that its decision was against the manifest weight of the evidence or was arbitrary and capricious.

■ Plaintiff next contends that the record does not support Hinsdale's arguments that it would provide lower cost services than other facilities, or that it provides unique services not otherwise available from other facilities in the area. We have carefully reviewed the record and conclude that the record contains substantial evidence which supports Hinsdale's position. Accordingly, we cannot say that the Board's decision was against the manifest weight of the evidence as to these issues.

Plaintiff next contends that the Board's decision was arbitrary and capricious because the decision was not supported by documentation which was required by the Board's own regulations. In support of this contention, plaintiff relies on *Springwood Associates v. Health Facilities Planning Board*, 269 Ill. App. 3d 944 (1995).

In *Springwood*, the appellate court reversed a circuit court order which had upheld the Board's approval of an application for a CON. 269 Ill. App. 3d at 952. The applicant was a skilled nursing facility which proposed to add 28 beds to its existing 122-bed facility. 269 Ill.

App. 3d at 946. At a public hearing, competitors of the applicant had objected to the application on the grounds, *inter alia*, that additional beds were not needed because of excess beds in facilities in surrounding counties. 269 Ill. App. 3d at 946. A report issued by the Department found that the application was in conformity with the review criteria established in sections 1110 and 1120 of the Code. 269 Ill. App. 3d at 946.

The *Springwood* court based its decision to reverse the circuit court on the differences between documentation required by the Board's regulations as set out in the Code and the documentation the Board requested in the application. 269 Ill. App. 3d at 950. The court determined that the documentation required by the regulations was controlling in the event that there was a conflict between the documentation required by the regulations and the documentation required by the application. 269 Ill. App. 3d at 948. The court held that if the applicant did not submit the documentation required by the regulations, the Board's decision was arbitrary and capricious and therefore could not stand. 269 Ill. App. 3d at 950.

In this case, plaintiff contends that the Board's decision was arbitrary and capricious because Hinsdale did not submit certain documentation required by section 1110.230 of title 77 of the Code (77 Ill. Adm. Code § 1110.230 (1994)). Plaintiff maintains that Hinsdale did not submit the following documentation required by section 1110.230: (1) market studies of the area indicating the characteristics of the population to be served; (2) letters of verification from other health facilities and organizations in the area, including any surveys done by such facilities on manpower availability; (3) documentation of the coapplicants' compliance with licensure requirements showing the absence of two or more serious violations in previously operated health facilities over the last five years; and (4) documentation showing that the proposed facility will serve a population group in need of the proposed services and that sufficient service exists to meet the need, including, but not limited to: area market studies; models calculating need; historical high utilization of other providers; and identification of individuals likely to use the project. See 77 Ill. Adm. Code §§ 1110.230(a)(1), (c)(1), (d), (f)(2)(A), (f)(2)(B), (f)(2)(C), (f)(2)(D) (1994).

Defendants respond that plaintiff has waived the issue of the adequacy of the documentation supporting Hinsdale's application because plaintiff did not raise the issue during proceedings before an administrative agency. We agree.

If a party fails to assert a particular argument before an administrative agency, the point is waived and should not be

considered on appeal. *Board of Education of Community High School District No. 94 v. Regional Board of School Trustees*, 242 Ill. App. 3d 229, 234 (1993). In this case, plaintiff did not raise the issue of the adequacy of the documentation supporting Hinsdale's application before either the Board or the Department. At the public hearing, plaintiff's objections focused on the issues of whether Hinsdale proposed to expand the capacity of its facility by increasing the number of operating rooms in its relocated facility, and whether there was excess surgical capacity in other facilities in the area. Because plaintiff failed to raise the issue of the adequacy of the documentation supporting Hinsdale's application before either the Board or the Department, the issue is waived and we will not consider it.

Even if the issue had not been waived, *Springwood* is distinguishable from this case. The cases are factually distinguishable because the applicant in *Springwood* sought permission to expand its facility by increasing the number of beds in the facility, while Hinsdale, the applicant in this case, sought permission merely to relocate its facility without expanding the number of its operating rooms or the services it offered. In addition, there is nothing in *Springwood* to indicate that the court in that case considered section 1130.660 of title 77 of the Code in reaching its decision. However, in this case, we have determined that section 1130.660 gave the Board the authority to approve the application even though the project may have failed to meet one or more of the review criteria. Finally, with respect to the documentation concerning compliance with the licensure requirements, we note that the reason Hinsdale applied for a CON was because of an acknowledged licensing problem.

For these reasons, we conclude that *Springwood* is not controlling in this case. Thus, aside from waiver of the issue, *Springwood* would not require us to reverse the trial court order.

Plaintiff next contends that the Board's decision violated plaintiff's equal protection rights. Plaintiff asserts that the Board's decision to grant Hinsdale's application for a CON during a time when the Board had consistently denied the applications for CONs of other health facilities in the area, including plaintiff's application, on the ground of excess surgical capacity in the area violated plaintiff's equal protection rights. Plaintiff argues that the purpose of the Planning Act and the Board's review criteria require comparison of pending applications and existing services and facilities.

Defendants respond that plaintiff's contention is nothing more than an attempt by plaintiff to reassert an argument for comparative review which the circuit court rejected. Defendants point to a hearing in the circuit court where the court informed plaintiff that the

part of the Planning Act which formerly allowed comparative review (20 ILCS 3960/6.1 (West 1992)) had been repealed. Defendants assert that plaintiff nonetheless continues to attempt to argue for comparative review under the guise of an equal protection argument.

We note that plaintiff states in its appellate brief, at page 34, that its "application should have been considered together with Hinsdale's." Later, in the same paragraph, plaintiff states that "[i]f it was appropriate for the Board to grant any CON expanding outpatient surgical services, all the CON applications should have been considered together so that the most appropriate application under the relevant criteria would be granted."

■ Based on these statements, we agree with defendants that plaintiff's position is tantamount to an argument for comparative review. In view of the legislature's repeal of the section in the Planning Act which formerly allowed comparative review (Pub. Act 88— 18, eff. July 2, 1993 (repealing 20 ILCS 3960/6.1 (West 1992))), plaintiff's argument fails.

Moreover, plaintiff's equal protection argument is unavailing. Equal protection does not proscribe the treatment of different classes of persons in different ways; rather, equal protection requires only the equal treatment of persons similarly situated. *Yellow Cab Co. v. Jones*, 108 Ill. 2d 330, 341 (1985). Thus a threshold question in any equal protection analysis is whether similarly situated people are being treated dissimilarly. *People v. Burton*, 100 Ill. App. 3d 1021, 1023 (1981).

In this case, plaintiff and Hinsdale were not similarly situated. In its application for a CON, plaintiff sought permission to expand its existing facility by offering additional services. In its application for a CON, Hinsdale sought permission to relocate its facility without any expansion of services. Thus plaintiff and Hinsdale were not similarly situated in terms of whether their applications sought to expand the total amount of services they offered (and therefore in the entire area).

We recognize that the Planning Act imposes the same requirements on applicants for CONs who propose to expand the services they offer and those who propose to "establish" a facility by relocating it without expanding services. See 20 ILCS 3960/3, 5 (West 1994). However, this does not mean that the need for such facilities and services is the same. As seen above, because of factors such as the difficulty patients of an existing facility might have in obtaining services at other facilities in the area, there may be a greater need to allow an existing facility to relocate than for an existing facility to expand its services. Thus, an applicant, such as plaintiff, which

proposes to expand its services is not situated the same as an applicant, such as Hinsdale, which proposes to relocate a facility without expanding its services.

Thus, plaintiff has not established a threshold requirement of an equal protection claim based on the Board's decision, *i.e.*, that it was similarly situated with Hinsdale. Accordingly, plaintiff's contention that the Board's decision violated plaintiff's equal protection rights fails.

Finally, plaintiff contends that the Board's decision was a violation of procedural due process. Plaintiff argues that the Board used a double standard when it denied plaintiff's application for a CON but granted Hinsdale's application for a CON. For reasons similar to those in our analysis of the equal protection issue, we cannot say that plaintiff has shown that the Board applied a double standard in this case. Consequently, plaintiff's due process argument fails.

Based on the foregoing, the order of the circuit court of Du Page County is affirmed.

Affirmed.

COLWELL and RATHJE, JJ., concur.