# Illinois Official Reports

## Appellate Court

---

**Tolliver v. Housing Authority, 2017 IL App (1st) 153615**

---

| | |
|---|---|
| Appellate Court Caption | CHERRISH TOLLIVER, Petitioner-Appellant, v. THE HOUSING AUTHORITY OF THE COUNTY OF COOK, Respondent-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-3615 |
| Rule 23 order filed | March 31, 2017 |
| Motion to publish granted | May 17, 2017 |
| Opinion filed | May 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-8364; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Circuit court reversed; hearing officer's decision reversed; and cause remanded with directions. |
| Counsel on Appeal | Erin Solomon, Eric Shinabarger, and Delilah Flaum, of Winston & Strawn LLP, and Patricia Nelson and Ian Turnipseed, of Chicago Volunteer Legal Services, both of Chicago, for appellant.<br><br>Michael E. Kujawa and Deborah A. Ostvig, of Schain, Banks, Kenny & Schwartz, Ltd., of Chicago, for appellee. |

| Panel | JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    Petitioner Cherrish Tolliver appeals from a judgment of the circuit court affirming a decision of the respondent the Housing Authority of the County of Cook (HACC) terminating her federally subsidized housing voucher she was receiving pursuant to the Section 8 Housing Choice Voucher Program (HCV Program). For the reasons that follow, we reverse and remand with directions.

¶ 2                                    BACKGROUND

¶ 3    Petitioner became a participant in the HCV Program in 2007. The program is a federally-funded one in which the United States Department of Housing and Urban Development (HUD) provides rent subsidies to eligible families to assist them in renting privately-owned housing. See 42 U.S.C. § 1437f(o) (2006); 24 C.F.R. § 982.1(a)(1) (2006); *Khan v. Bland*, 630 F.3d 519, 523-25 (7th Cir. 2010). The program is governed by the Code of Federal Regulations (Federal Code) (24 C.F.R. § 982.1 *et seq.* (2006)) and is administered on the local level by governmental entities referred to as public housing agencies or PHA's (24 C.F.R. § 982.1(a) (2006)), such as the Chicago Housing Authority (CHA).[1] Under the HCV Program, petitioner's landlord received a voucher from the HACC to subsidize a portion of her rent for a house located at 13841 Kanawha Avenue, Dolton, Illinois. See 24 C.F.R. § 982.451 (2006). As one of the conditions for participating in the HCV Program, petitioner agreed to report in writing within 30 days when there was an increase in her household income.

¶ 4    In October 2012, the HACC alleged that the petitioner violated this condition. In a letter dated October 16, 2012, the HACC notified petitioner that it intended to terminate her from the HCV Program, effective November 30, 2012, on the ground that she had failed to timely report an increase in household income from her employment with the Diamond Detective Agency.

¶ 5    Petitioner appeared *pro se* and challenged the termination at an informal administrative hearing held before a hearing panel. At the hearing, the HACC maintained that the petitioner had failed to report income she received from the detective agency in 2011 and 2012. Petitioner responded that she regularly informed her caseworker via telephone and fax about her sporadic employment situation with the detective agency and that the caseworker routinely accepted such notification. Petitioner explained that due to intermittent layoffs, her employment with the detective agency was sporadic during the years at issue.

¶ 6    On February 19, 2013, a hearing officer with the HACC concluded that the HACC had proven its case by a preponderance of the evidence. The hearing officer issued an order and decision upholding the HACC's decision to terminate petitioner from the HCV Program.

---

[1]The CHA is a municipal corporation operating under the Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2012)) for the purpose of providing safe and decent housing for low income persons. *Castro v. Chicago Housing Authority*, 360 F.3d 721, 724 (7th Cir. 2004). HACC is a private company operating under contract with the CHA.

¶ 7 On March 27, 2013, petitioner, acting *pro se*, filed a petition for judicial review by writ of *certiorari* in the circuit court. In her petition, petitioner claimed that the decision to terminate her from the HCV Program was contrary to the law.

¶ 8 On August 23, 2013, counsel from the law firm of Kirkland and Ellis and from Chicago Volunteer Legal Services filed a brief in support of the petitioner's petition. The brief concluded in part that the HACC had "misapplied the statute in using a mandatory standard and not affording the Petitioner the statutorily required discretionary basis for decision. Finally, with the myriad of ways in which [the HACC] could have dealt with any alleged failure of Petitioner to timely report continued income, such as affording Petitioner the opportunity to repay any alleged overpayments, or consideration that Petitioner had never before failed to report any income, or that Petitioner's three children would be adversely affected, the decision to terminate Petitioner was unusually harsh by being contrary to the HACC's and HUD's own Administrative Plan and guidebook."

¶ 9 The circuit court agreed with the petitioner's arguments, and on November 15, 2013, remanded the matter to the HACC, directing the housing agency to hold another informal hearing to consider mitigating circumstances. The court determined that the HACC had violated the petitioner's due process rights by terminating her from the HCV Program without considering any mitigating circumstances. The court also held the HACC failed to provide petitioner with notice of termination regarding her unemployment benefits.

¶ 10 Upon remand, instead of holding an informal hearing in accordance with the circuit court's order, the HACC sent petitioner another notice of termination, this time notifying her that she was being terminated from the HCV Program for allegedly failing to report that she had returned to work at the detective agency following layoff periods from 2009 through 2012.

¶ 11 On August 14, 2014, the HACC held a second informal hearing at which petitioner again challenged her termination from the program. On November 5, 2014, the HACC issued an order and decision upholding the termination.

¶ 12 On January 16, 2015, petitioner, through her attorneys, filed a second petition and supporting brief in the circuit court, contesting the HACC's latest decision to terminate her from the HCV Program. Petitioner argued that the HACC failed to exercise discretion or consider mitigating circumstances prior to terminating her from the program. She maintained that these failures not only violated applicable federal law, but also violated the circuit court's remand order. Petitioner claimed that the latest reasons the HACC gave for terminating her from the program were outside the scope of the circuit court's remand order.

¶ 13 The circuit court again agreed with the petitioner and on April 3, 2015, reversed the HACC's decision, and issued an order remanding the matter to the HACC, again directing the housing agency to properly consider mitigating circumstances. In response to the circuit court's order, the HACC issued a third order and decision, this time offering a repayment plan in lieu of termination. The HACC stated that the petitioner could avoid termination and retain her housing voucher if she agreed to repay the HACC $13,586. Under the agreement, petitioner would have to enter into a repayment plan within 60 days and pay an up-front lump sum payment of $10,586.

¶ 14 On April 29, 2015, petitioner, again through her attorneys, filed a third petition and supporting brief in the circuit court, challenging the HACC's decision. Counsel argued that the repayment plan was unreasonable and in violation of federal law, as well as the HACC's own repayment policy. Counsel contended it was unreasonable to expect a voucher recipient

making $15,000 per year to make a $10,000 down payment within 60 days. Counsel further contended that the HACC's failure to follow its own guidelines in holding interim reexaminations of the petitioner's income status allowed the housing agency's alleged overpayments to petitioner to unreasonably accumulate over several years, without any notice to petitioner. Counsel claimed that the petitioner did not intentionally misreport her income, and that it would be unreasonable to require her to pay over $10,000 up front, when she had accurately, and in good faith, reported her income.

¶ 15    The circuit court again agreed with the petitioner's arguments, and on July 24, 2015, issued an order remanding the matter to the HACC for a third time, ruling that the repayment plan was not reasonable as required by HUD guidelines.

¶ 16    Upon remand, the HACC issued an amended order and decision on August 18, 2015. In this latest decision, the HACC stated that it would allow the petitioner to enter into a repayment agreement without requiring her to pay an up-front lump sum payment. The HACC stated that as a condition of her reinstatement, petitioner would be required to enter into a repayment agreement by September 30, 2015, to pay $13,586 in installments over 36 months. On September 15, 2015, the HACC revised the amount of overpayment petitioner was required to pay to $13,488 over 36 months.

¶ 17    On October 2, 2015, the petitioner filed a fourth petition and supporting brief in the circuit court, challenging the HACC's decision for the same reasons given in her previous petition. On November 16, 2015, the circuit court affirmed the HACC's decision to terminate the petitioner from the HCV Program and dismissed the case. This timely appeal followed.

¶ 18                                    ANALYSIS

¶ 19    This case is before us on appeal from a common-law writ of *certiorari*. The common-law writ of *certiorari* is used to obtain circuit court review of an administrative decision when the administrative agency's enabling statute does not expressly adopt the Administrative Review Law (Review Law) (735 ILCS 5/3-101 *et seq.* (West 2010)) and provides no other method for reviewing the agency's decisions. *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 332-33 (2009). The CHA operates under the Housing Authorities Act (310 ILCS 10/1 *et seq.* (West 2008)). See *Landers v. Chicago Housing Authority*, 404 Ill. App. 3d 568, 571 (2010). The Housing Authorities Act did not adopt the Review Law and therefore the appropriate vehicle for review is a common-law writ of *certiorari* as was done in this case.

¶ 20    Following a circuit court ruling on a writ of *certiorari* seeking review of an administrative decision, we " 'treat th[e] appeal as we would any other appeal for administrative review.' " *Lipscomb v. Housing Authority*, 2015 IL App (1st) 142793, ¶ 11 (quoting *Landers*, 404 Ill. App. 3d at 571). In administrative review cases, we review the decision of the administrative agency, not the decision of the circuit court. *Id.*

¶ 21    Petitioner contends the HACC violated her due process rights by failing to provide her with proper notice required under federal law before terminating her participation in the HCV Program. We agree.

¶ 22    Participants in programs such as the HCV Program enjoy a property interest in continued occupancy of subsidized housing, which constitutes a statutory entitlement subject to procedural due process protections. See *Robinson v. District of Columbia Housing Authority*, 660 F. Supp. 2d 6, 20 (D.D.C. 2009). "The essence of procedural due process is meaningful

- 4 -

notice and a meaningful opportunity to be heard." *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 799 (2002). In *Goldberg v. Kelly*, 397 U.S. 254, 266-71 (1970), the United States Supreme Court outlined procedural due process requirements of a pretermination hearing involving welfare benefits: (1) timely and adequate notice detailing the reasons for termination; (2) an opportunity to appear at the hearing, present evidence and oral argument, and confront and cross-examine adverse witnesses; (3) the right to be represented by counsel; (4) a right to a decision rendered by an impartial decisionmaker; (5) a right to have that decision based solely on rules of law and evidence presented at the hearing; and (6) a right to a statement by the decisionmaker, setting forth the reasons for the decision and the evidence upon which it was based.

¶ 23　　Following *Goldberg*, the federal government promulgated rules in accordance with the Court's decision. See 55 Fed. Reg. 28538, 28541 (July 11, 1990) ("PHAs must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of *Goldberg v. Kelly*."). The Federal Code provides in relevant part that a PHA may terminate a participant's Section 8 benefits if the family violates any family obligations under the program (24 C.F.R. § 982.552(c)(1)(i) (2006)). However, prior to any hearing for termination, the PHA must provide the family with "prompt written notice," containing a "brief statement of reasons for the decision." 24 C.F.R. § 982.555(c)(2)(i) (2008). Although the Federal Code does not discuss the amount of information that must be contained in the "brief statement," courts have found that "the notice must, at the very least, inform the resident of the situation so that she can make an intelligent response." *Jones v. Lansing Housing Comm'n*, No. 5:03-CV-123, 2003 WL 26118817, at *6 (W.D. Mich. Sept. 19, 2003).

¶ 24　　The purpose of the written notice is " 'to inform the tenant of the allegations so that he can prepare a defense.' " *Driver v. Housing Authority*, 713 N.W.2d 670, 676 (Wis. Ct. App. 2006) (quoting *Edgecomb v. Housing Authority*, 824 F. Supp. 312, 314 (D. Conn. 1993)). The notice must be " 'sufficiently specific ... to enable [the tenant] to prepare rebuttal evidence to introduce at his hearing appearance.' " *Edgecomb*, 824 F. Supp. at 315 (quoting *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980)). In order to effectively rebut adverse evidence at the hearing, the notice must alert the tenant of the nature of this evidence. *Driver*, 713 N.W.2d at 676. "A notice that does not indicate the nature of the proscribed acts or when the acts were committed is insufficient." *Jones*, 2003 WL 26118817, at *6 (citing *Edgecomb*, 824 F. Supp. at 315).

¶ 25　　A review of the HACC's two termination letters clearly reveal that they failed to comply with the notice requirements of the Federal Code regulations or the Supreme Court's mandate in *Goldberg*. The first letter merely alleged that the petitioner "failed to report income from the Diamond Detective Agency." The letter is devoid of the dates on which the alleged unreported income was earned or any dollar amounts, much less any calculations or underlying data. Similarly, the second termination letter alleged, "You failed to report your return to work at Diamond Detective Agency following your layoff periods in 2009 through 2012." Again, this letter is devoid of any specific dates on which the alleged unreported income was earned or any dollar amounts.

¶ 26　　With such little information, it was virtually impossible for the petitioner to adequately prepare a defense, particularly since the second termination letter raised issues spanning a four-year time period and first put the petitioner on notice of issues concerning years 2009 and 2010. In addition, the hearing conducted on August 14, 2014, was the first time the HACC

notified petitioner that she had allegedly been overpaid the amount of $13,586. Prior to that hearing, the petitioner was not provided with this figure, and she was never given any information or data on how this figure was arrived at.

¶ 27    The HACC suggests that the petitioner's procedural due process rights were not violated by the lack of notice because she came prepared at the hearings and was able to present her case to the hearing officer. We strongly disagree. First, the HACC, beyond its own opinion, provides no evidence establishing that the petitioner was "prepared" at the hearings. And second, and more importantly, the HACC's alleged perception that the petitioner was so-called "prepared" at the hearings is both legally irrelevant and not a trustworthy guidepost as to whether she received sufficient notice.

¶ 28    It was the responsibility of the HACC to put petitioner on notice as to the precise conduct she allegedly engaged in that warranted terminating her participation in the HCV Program. Due process imposes the burden of providing adequate notice on the government, not on the individual. *Driver*, 713 N.W.2d at 678. Without any information such as the dates on which the alleged unreported income was earned or any calculations or underlying data, petitioner could not have known how to prepare rebuttal evidence to introduce at her hearings or to adequately defend against the claims and allegations asserted against her by the HACC. Due process "requires such information in order for the tenant to adequately prepare for the hearing and to understand what factors motivated the final decision, particularly where more than one potential ground for termination exists." *Id.* at 680. In sum, the HACC violated the petitioner's due process rights by failing to provide her with proper notice required under federal law before terminating her participation in the HCV Program.

¶ 29    Moreover, even if we found that the termination notices were not constitutionally deficient, we would still find the HACC violated the petitioner's due process rights and its own administrative plan by failing to conduct interim reexaminations of the petitioner's income after she notified the housing agency of changes in her employment status. HUD regulations and the HCV Program's administrative plan require the HACC to conduct interim reexaminations every 90 days for families reporting zero income. See 24 C.F.R. § 982.516(b)(2) (2006); Housing Authority of the County of Cook, *Housing Choice Voucher Program Administrative Plan* 205 (2014) ("The HACC will schedule an interim reexamination every ninety (90) days for families reporting zero ($0) income.").

¶ 30    A review of the petitioner's recertification appointments shows the following. In 2009, petitioner reported that her income consisted solely of unemployment benefits. There was no follow-up by the HACC. In 2010, petitioner again reported that her income consisted solely of unemployment benefits. Petitioner checked boxes stating that she expected to work within the next year, expected to receive unemployment benefits, and expected to receive public aid. Once again, there was no follow-up by the HACC. In 2011, petitioner reported that she was employed by the Diamond Detective Agency, but expected to be relieved of her employment by the end of that month. She also checked boxes stating that she expected to receive unemployment benefits and public aid in the future. The HACC conducted no follow-up. In 2012, petitioner reported zero income and checked boxes stating that she expected to receive unemployment benefits and public aid in the future. The HACC did not conduct an interim reexamination following this report of zero income.

¶ 31    The above shows that from 2010 to 2012, the petitioner reported zero income, had income consisting solely of unemployment benefits, or expected to lose her sporadic employment with

the detective agency. Petitioner reported zero income in 2012. Between 2009 and 2012, she repeatedly reported changes in her income based on her fluctuating employment status. Thus, under the HCV Program's administrative plan, the housing agency was required to conduct interim reexaminations with petitioner every 90 days. However, the HACC did not pursue any follow-up or conduct a single reexamination in this time frame.

¶ 32    The HACC's failure to provide this oversight allowed the housing agency's alleged overpayments to petitioner to unreasonably accumulate over several years, without any notice to the petitioner. The HACC failed to comply with HUD regulations and its own policies designed to catch and prevent such alleged overpayments for individuals reporting zero income and whose financial circumstances substantially change. Such interim reexaminations would have alerted the HACC of the alleged overpayments to petitioner. The HACC's failure to conduct these interim reexaminations allowed the alleged overpayments to accrue to a point where requiring petitioner to repay $13,488 in overpayments over 36 months, effectively equates to a *de facto* termination of her housing voucher.

¶ 33    " '[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency.' " *Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) (quoting *Montilla v. Immigration & Naturalization Service*, 926 F.2d 162, 166 (2d Cir. 1991)). In addition, administrative agencies must generally follow their own rules as written, without making *ad hoc* exceptions or departures from these rules when adjudicating. *Mattoon Community Unit School District No. 2 v. Illinois Educational Labor Relations Board*, 193 Ill. App. 3d 875, 881 (1990). "When an administrative agency has adopted rules and regulations under its statutory authority for carrying out its duties, the agency is bound by those rules and regulations and cannot arbitrarily disregard them." *Springwood Associates v. Health Facilities Planning Board*, 269 Ill. App. 3d 944, 948 (1995). In sum, the HACC's failure to comply with its own administrative plan removed a procedural safeguard relied upon by tenants like the petitioner and resulted in a deprivation of her of due process.

¶ 34    The HACC presents a number of arguments regarding its conduct in relation to the interim reexaminations, none of which are persuasive. The HACC argues that HUD regulations gave it the discretion to hold interim reexaminations when it determined they were necessary. It is true that under both HUD regulations and the HCV Program's administrative plan, the HACC has the discretion to conduct interim reexaminations. But this discretion is not absolute. HUD regulations provide for discretionary interim reexaminations in some circumstances (24 C.F.R. § 982.516(c)(1) (2006)) and mandatory interim reexaminations in others (24 C.F.R. § 982.516(b)(2) (2006)). Therefore, the fact that the HACC may voluntarily conduct interim reexaminations on a discretionary basis does not lead to the logical conclusion that such reexaminations are discretionary in every instance.

¶ 35    The HACC next argues there is no evidence in the record showing that a 90-day interim reexamination of the petitioner's income did not occur in the fall of 2012. Here, the HACC improperly attempts to place the burden on petitioner to prove a negative—that a reexamination did not occur. We do not believe that HUD intended to place such a burden on recipients of housing vouchers, and we decline the HACC's invitation to do so under the factual circumstances in this case.

¶ 36    The HACC maintains that even if it had opted to conduct an interim reexamination of the petitioner's income for the years 2009 to 2011, there is no guarantee she would have properly reported her income, and therefore, we should not disturb its decision to terminate her

participation in the HCV Program. We strongly reject such an argument. Under the HACC's logic, recipients of federal housing vouchers could be removed from the housing program without being afforded any procedural due process protections, simply because there was no guarantee the recipients would honestly report their income. Such a rule would render procedural due process protections meaningless for recipients of housing vouchers issued under the HCV Program.

¶ 37    Finally, we find that under the factual circumstances in this case, the latest repayment plan the HACC presented to the petitioner was unreasonable as a matter of law. A sanction imposed by an administrative agency may be reversed if it amounts to an abuse of discretion. *Sonntag v. Stewart*, 2015 IL App (2d) 140445, ¶ 19. "A sanction will be found to be an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances." *Kazmi v. Department of Financial & Professional Regulation*, 2014 IL App (1st) 130959, ¶ 21.

¶ 38    After having reviewed the facts in this case, we believe the HACC abused its discretion by imposing a sanction that was overly harsh in view of the mitigating circumstances. The repayment plan requires the petitioner to pay $13,488 or $374.67 per month, over the short period of 36 months. This repayment contribution would be in addition to the petitioner's mandated share of the rent, which is 30 percent of income, or $378.68 per month under the administrative plan.

¶ 39    According to the HACC, the petitioner made at most $15,147 in 2012, the last year noted in the record. This results in a gross income of $1262.25 per month. Thus, the HACC's repayment plan would require the petitioner to pay $753.35 per month in rent or nearly 60 percent of her total income, which is prohibitive and unreasonable on its face given the petitioner's family needs and financial position.

¶ 40    Moreover, the current repayment plan is especially unreasonable in light of the fact that the HACC's failure to follow HUD guidelines or comply with its own administrative plan allowed the housing agency's alleged overpayments to petitioner to unreasonably accumulate over several years, without any notice to the petitioner. Added to this is the failure of the HACC to properly document the steps or record the data it utilized in calculating the alleged overpayments. The HACC also improperly considered reported income in its overpayment calculation. On her May 20, 2011 recertification, the petitioner reported that she was employed with the detective agency. Yet, the HACC improperly counted all subsequent income as an overpayment.

¶ 41    Accordingly, for the reasons set forth above, we reverse the order of termination and the judgment of the circuit court. We order the HACC to reinstate the petitioner's housing voucher *instanter*. We remand the matter to the hearing officer to determine what, if any, overpayments were made to the petitioner. If a repayment agreement is required, the hearing officer shall consider the petitioner's ability to pay and create a reasonable repayment plan.

¶ 42    Circuit court judgment reversed; hearing officer's decision reversed; and cause remanded with directions.