CHARTER MEDICAL OF COOK COUNTY, INC., d/b/a Charter Hospital of Hoffman Estates, *et al.*, Plaintiffs-Appellants, v. HCA HEALTH SERVICES OF MIDWEST, INC., d/b/a HCA Woodland Hospital, *et al.*, Defendants-Appellees.—CHARTER MEDICAL OF COOK COUNTY, INC., d/b/a Charter Hospital of Hoffman Estates, *et al.*, Plaintiffs-Appellants, v. COMMUNITY PSYCHIATRIC CENTERS, INC., d/b/a Community Psychiatric Center Hoffman Estates Hospital, *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—88—3233, 1—88—3527 cons.

Opinion filed June 29, 1989.

Stanley A. Walton III and Ronald D. May, both of Winston & Strawn, of Chicago, and King & Spalding, of Atlanta, Georgia (Glen A. Reed and S. Wade Malone, of counsel), for appellants.

David A. Epstein, Penny Brown, and Karlo Karacic, all of Carroll, Sain & Epstein, Ltd., of Chicago, for appellee HCA Health Services of Midwest, Inc.

Jeffrey R. Ladd and Lawrence M. Gavin, both of Bell, Boyd & Lloyd, of Chicago, for appellee Community Psychiatric Centers, Inc.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This consolidated appeal challenges the authority of the Illinois Health Facilities Planning Board (Board) to award certificates of need to three applicants whose construction of psychiatric hospitals in planning area 7-E would produce more beds than the projected bed need. The appeal is brought by one of the certificate of need recipients, Charter Medical of Cook County (Charter). Charter seeks a reversal of the Board's decision to award certificates of need to the other two recipients, HCA Health Services of Midwest (HCA) and Community Psychiatric Center (CPC). Joining Charter in this appeal are Northwest Mental Health Centers and the Maine Family Service and Mental Health Association (collectively, the Centers), who operate existing mental health facilities in planning area 7-E.

The relevant facts are undisputed. Pursuant to the Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1151 *et seq.*), an entity which proposes to build a new health care facility must file a certificate of need application for approval by the Illinois Health Facilities Planning Board. Charter, HCA, and CPC filed their respective CON (certificate of need) applications within three weeks of each other. All three applicants proposed to construct and operate free-standing acute mental illness hospitals in Hoffman Estates, Illinois. Hoffman Estates is located in planning area 7-E. Charter sought to build an 80-bed hospital. HCA and CPC each sought to build 100-bed

hospitals. At the time each of the applications was deemed complete, the stated bed need for acute mental illness beds in planning area 7-E was 154.

A public hearing was held on October 15, 1987, regarding HCA's application. Under the Board rules, Charter and the Centers were entitled to present testimony regarding HCA's application. Accordingly, Charter submitted a letter asserting that the project failed to comply with State Board Rule 1110.730(a) (77 Ill. Adm. Code §1110.730(a) (1985)), which provides that "[a]dditional or new beds must be added to existing hospitals." The Centers also filed an objection alleging that HCA's application was not in conformance with certain review criteria set forth in the Board rules. After several other hearings, HCA's application was approved by the Board on November 5, 1987. Pursuant to the Board rules, Charter submitted a request for reconsideration of the approval of HCA's application on the basis that the Board failed to follow its adopted procedures. Charter contended, among other things, that pursuant to Board Rule 1160.420 (77 Ill. Adm. Code §1160.420 (1985)), the Board was required to batch HCA's application with Charter's pending application. The Board denied the request for reconsideration. Charter subsequently filed a complaint for administrative review in the circuit court. The circuit court affirmed the Board's approval of HCA's application.

A public hearing was held on CPC's application on November 16, 1987. Charter filed an objection asserting that CPC's project failed to comply with Rule 1110.730(a), which requires that additional or new beds be added to existing hospitals. After several other hearings, CPC's application was approved on February 5, 1988. Charter requested a reconsideration hearing, contending, among other things, that pursuant to Board Rule 1160.420, the Board was required to batch HCA's application with Charter's pending application. Upon denial of the request for reconsideration, Charter filed a complaint in the circuit court for administrative review. The circuit court affirmed the Board's approval of CPC's application.

Charter's certificate of need application to construct a 100-bed acute mental illness facility was approved on February 5, 1988. Neither HCA nor CPC challenges the Board's decision regarding Charter's CON.

Charter first argues that the CONs which were granted to HCA and CPC should be revoked because the Board violated Rule 1160.420, which provides in pertinent part that "[s]ubstantive projects shall be batched into categories and considered in relation to each other according to *** Health Service Area *** Project Scope ***

[and] Category of Service Affected." 77 Ill. Adm. Code §1160.420 (1985).

■ Because the Board, as an administrative agency, is given substantial discretion in construing and applying its own rules, our role, as a reviewing court, is limited to determining whether the Board's construction and application of this rule is plainly erroneous or inconsistent with long-settled construction. *Neff v. Miller* (1986), 146 Ill. App. 3d 395, 402, 496 N.E.2d 1073, 1077.

■ The record indicates that the Board was aware that CPC, HCA and Charter filed their applications for CONs within three weeks of each other and that each applicant sought to construct acute mental illness facilities in the same planning area. From a plain reading of this rule, it is unclear if Rule 1160.420 applies to the situation. However, even if the rule does apply, it is unclear what the Board is required to do in such situations. The rule merely provides that substantive projects shall be batched and considered in relation to each other. Charter fails to cite any other statute, Board rule, or precedent to establish a procedure for when applications are to be batched or a standard the Board should follow in considering applications in relation to each other. Without anything more, we cannot say that the Board's procedure in the instant case violated Rule 1160.420.

Charter argues that even without a rule, the Board was required to batch and comparatively review the applications of HCA and CPC under the doctrine set forth in *Ashbacker Radio Corp. v. Federal Communications Comm'n* (1945), 326 U.S. 327, 90 L. Ed. 108, 66 S. Ct. 148.

*Ashbacker* involved competing applications for the same radio frequency. Because of the interference which would result if two applicants received a license for the same frequency, only one license could be granted. The FCC granted a license to one applicant and then scheduled a hearing for the other applicant. The Supreme Court recognized that because the applications were mutually exclusive in that only one license could be granted, the approval of one without a hearing to both deprived the loser of a hearing to which he was entitled under the governing statute. The Court therefore required a hearing on each competing application before a license could be granted.

Although the *Ashbacker* doctrine has never been applied by the Illinois courts to CON cases, it has been applied to other jurisdictions to require batching of CON applications when the applications are mutually exclusive and filed within the same time period. See, *Gulf Court Nursing Center v. Department of Health & Rehabilitative Services* (Fla. App. 1985), 483 So. 2d 700; *Appeal of Behavior Science In-*

*stitute* (1981), 121 N.H. 928, 436 A.2d 1329.

■ In urging this court to find that the Board was required to batch under *Ashbacker*, Charter maintains that the applications of CPC and HCA were mutually exclusive. In this regard, Charter argues that at the time the CON applications of Charter, HCA and CPC were deemed complete, the bed need in planning area 7-E was 154. By granting all three CONs and allowing Northwest Mental Health Center to add beds to its existing facility, the Board approved 168 more beds than the stated bed need. Charter concludes that because more beds were approved than the bed need indicates, the applicants will not be economically viable if allowed to operate simultaneously.

Charter fails to point to any evidence in the record to support its conclusion that three hospitals cannot operate simultaneously and remain economically viable. Rather, Charter relies on the stated bed need as proof that the applicants are mutually exclusive. Such an argument assumes that the bed need creates a fixed pool of beds and that the Board is without authority to authorize beds in excess of that need.

The stated bed need in a planning area is a projection made by the State agency. Although a critical factor in determining need, there is nothing in the rules to indicate that the Board is without authority to deny a proposed project if not needed even though there is a projected bed need. Similarly, there is nothing to indicate that the Board is without authority to award more beds than the stated bed need. Without reference to any prior Board decision or rule, we cannot say that the stated bed need of 154 prohibited the Board from awarding these three certificates of need.

■ Charter's argument regarding batching suggests that batching is a procedure which compels the Board to select only one applicant. However, batching is a procedure to be used by the Board to ensure the hearing rights of applicants when only a limited number of CONs can be granted. Having concluded that the applications of HCA and CPC are not mutually exclusive, we find that the Board was not required to batch and comparatively review.

■ Charter further maintains that the award of the three CONs violates the purpose of the Planning Act, which Charter asserts is to prevent unnecessary construction and duplication of health care facilities. Again, Charter fails to point to any evidence in the record to support its conclusion that the construction of three hospitals will result in duplication of health care facilities. Further, prevention of unnecessary construction and duplication of facilities is one of several competing goals of the statute, such as quality, availability, and devel-

opment. (See generally Illinois Health Facilities Planning Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1152).) In focusing on this one goal of the statute, Charter advocates a mechanical approach to allocating health care services. However, Charter overlooks the Board's discretion, judgment and expertise required for a balanced consideration of all statutory and regulatory criteria.

■ Charter next argues that in approving the applications of HCA and CPC to construct freestanding acute mental illness hospitals, the Board violated Rule 1110.730(a), which provides that "[a]dditional or new beds must be added to existing hospitals." (77 Ill. Adm. Code §1110.730(a) (1985).) Charter acknowledges that under Rule §1110.320(c), the Board is given discretion to permit the construction of a freestanding hospital where an applicant "can justify establishment of a new service by documenting improvement of distribution or accessibility of the service." (77 Ill. Adm. Code §1110.320(a) (1985).) However, Charter maintains that Rule 1110.730(a) controls because it is found in the section of the rules dealing specifically with the review criteria for projects involving acute mental illness beds, whereas Rule 1110.320(c) is found in the section of the rules dealing with general review criteria. Thus, Charter asserts that Rule 1110.730(a) is an absolute prohibition of new acute mental illness hospitals.

As stated above, our review of the Board's interpretation and application of its own rules is limited to determining whether such interpretation and application is plainly erroneous or inconsistent with long-settled construction. (*Neff v. Miller* (1986), 146 Ill. App. 3d 395, 402, 496 N.E.2d 1073, 1077.) As CPC and HCA point out, the rules contained in subpart D, such as Rule 1110.320(c), are to be applied in addition to the rules contained in subpart H, such as Rule 1110.730(a). (See 77 Ill. Adm. Code §§1110.310, 1110.710 (1985).) Thus, the Board's interpretation of its rules as allowing the construction of freestanding hospitals is reasonable under Rule 1110.320(c). Furthermore, in light of the fact that Charter's application to construct a freestanding psychiatric hospital was approved, it is clear that the Board acted consistently with prior rulings.

■ Charter next argues that the Board's conclusion that HCA's application complied with the relevant review criteria is against the manifest weight of the evidence. Charter's challenge focuses on the review criteria set forth in Rules 1110.230(c), 1110.230(g), and 1110.230(l). Basically, these rules require HCA to demonstrate that its application is responsive to and is primarily designed to serve the needs of planning area 7-E.

In support of its manifest weight argument, Charter essentially

relies on the State agency report. This report raised questions about the documentation submitted by HCA with regard to these three rules and indicated: (1) that HCA's proposal to devote 78 of its 100 beds to children and adolescents was contrary to the need of planning area 7-E for more adult beds; (2) that HCA's bed mix and letters of support indicated that HCA did not primarily intend to serve patients from planning area 7-E; and (3) that HCA should explore developing more adult beds and more referrals from planning area 7-E.

The Board considered this report, HCA's application, and HCA's testimony and found that the proposed project substantially complied with the relevant review criteria and would serve the area needs. It is not the function of this court to weight the evidence; rather, our review is limited to determining whether the Board's decision is against the manifest weight of the evidence. *Northwest Hospital v. Illinois Health Facilities Planning Board* (1978), 59 Ill. App. 3d 221, 227, 375 N.E.2d 1327, 1332.

During the relevant proceedings, HCA presented evidence that the area 7-E child and adolescent psychiatric patients were regularly being sent to HCA facilities located outside the planning area. HCA testified that the location of its hospital as part of a planned medical campus would serve to draw area patients. The record also indicates that HCA entered into agreements with mental health care providers, community agencies, and public officials located in planning area 7-E to provide services to local child and adolescent patients. With regard to the bed mix, HCA stated that if necessary, it had the capability to meet future demands for adult beds in area 7-E. As proof of its intent and capability of serving area 7-E, HCA pointed to its established record at other Illinois hospitals of serving local community psychiatric needs. Based on this, we conclude that there was sufficient evidence to support the Board's finding that HCA's application is responsive to and is primarily designed to serve the needs of area 7-E. Accordingly, we reject Charter's contention that the Board's decision is against the manifest weight of the evidence.

■ Charter finally argues that the Board failed to make findings which sufficiently complied with Rules 1160.640 and 1110.30(b). Rule 1160.640 provides that the Board "shall state the basis for its final decision on an application for permit, in a written report and shall forward a copy of such findings to the applicant." (77 Ill. Adm. Code §1160.640 (1985).) Rule 1110.30(b) provides that the Board "shall state the basis for any decision on an application in accordance with conformity or nonconformity with the applicable review criteria." 9 Ill. Reg. 3734, 3743 (eff. March 6, 1985).

Both CPC and HCA received permit letters from the Board informing them that their certificate of need applications had been approved. The permit letters stated that in awarding the CONs, the Board considered the State agency report, the application material, and the applicant's testimony. The letters also stated that the Board's approval was based on the project's substantial conformance with the applicable standards and criteria. The permit letters further stated that the applicants had documented and justified the need to establish freestanding acute mental health facilities.

Charter argues that the permit letters are incomplete and that the Board failed to specifically explain why it approved applications to construct freestanding acute mental illness hospitals in light of Rule 1110.730(a), which Charter contends is a prohibition of new acute mental illness facilities. Charter further contends that the Board was required to make specific findings with regard to whether HCA's application conformed with the review criteria set forth in Rules 1110.230(c), 1110.230(g), and 1110.230(l) as discussed above.

Neither Rule 1160.640 nor Rule 1110.30(b) supports Charter's argument. Rules 1160.640 and 1110.30(b) simply require the Board to state the basis for its final decision. Neither rule requires point-by-point findings or explanations for how and why certain review criteria were applied. The contents of the permit letter constitute a reasonable application of Rules 1160.640 and 1110.30(b). In sum, the Board's decision reasonably complied with the findings' requirements of the rules.

For the foregoing reasons, the decision of the trial court affirming the Board's grant of certificates of need to HCA and CPC is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.