FIRST DIVISION
March 31, 2008

No. 1-07-1952

PROVENA HEALTH and PROVENA HOSPITALS,   )   Appeal from the
                                        )   Circuit Court of
     Plaintiffs-Appellants,             )   Cook County.
                                        )
          v.                            )
                                        )
ILLINOIS HEALTH FACILITIES PLANNING     )
BOARD, ILLINOIS DEPARTMENT OF PUBLIC    )
HEALTH, SHERMAN HOSPITAL, SHERMAN       )
HEALTH SYSTEMS, and REEVEN J. ELFMAN,   )   Honorable
                                        )   Peter J. Flynn,
     Defendants-Appellees.              )   Judge Presiding.

     JUSTICE WOLFSON delivered the opinion of the court:

     The Illinois Health Facilities Planning Board (Board)

approved a certificate of need (CON) permit for Sherman Hospital

and Sherman Health Systems (Sherman) to discontinue its old

hospital facility in east Elgin, Illinois, and construct a new

facility in west Elgin.  Provena Health and Provena Hospitals

(Provena) operate the only other hospital in the planning area,

located in west Elgin.  Provena filed a complaint for

administrative review opposing the construction of Sherman's new

hospital, contending it would have a devastating impact on

Provena Saint Joseph Hospital (St. Joseph).  We are called on to

decide whether the Board's decision to grant the permit was

clearly erroneous.  It was not.

FACTS

     On October 24, 2005, Sherman submitted to the Board its

1-07-1952

application for a permit to construct a new hospital at 1425 North Randall Road in Elgin. The site for the proposed project is approximately 4.5 miles from its current location at 934 Center Street in Elgin. The new facility would contain all the services offered at the existing hospital. A small portion of the old facility would remain open for scheduling, outpatient testing, and immediate care; the older functionally obsolete buildings would be demolished. The Board treated the application as a proposal for the discontinuation of the old hospital and construction of a new hospital. The estimated cost of the project was $310,352,103. Sherman proposed decreasing the total number of beds from 363 in the old hospital to 263 in the new hospital. The beds would be divided as follows:

| Service | Existing Beds | Proposed Beds |
| --- | --- | --- |
| Medical/Surgical | 293 | 196 |
| Pediatrics | 18 | 9 |
| Obstetrics | 24 | 28 |
| Intensive Care | 28 | 30 |
| Total | 363 | 263 |

Pursuant to the Illinois Health Facilities Planning Act (Act), 20 ILCS 3960/8 (West 2004), Sherman requested a public hearing, which was held on December 7, 2005. Members of the public, including local officials and representatives from Sherman, Provena, and other hospitals, attended the hearing and

2

testified for and against the project.

St. Joseph is located in west Elgin. The Fox River separates St. Joseph from Sherman's current hospital in east Elgin. St. Joseph and Sherman Hospital are the only two hospitals in the planning area. The proposed site for Sherman's new hospital is in west Elgin, approximately 3.7 miles north of St. Joseph, about the same distance between St. Joseph and the current Sherman Hospital.

On February 21, 2006, Provena submitted written letters and reports opposing the project, including a study by Deloitte Financial Advisory Services, LLP (Deloitte), concluding the proposed relocation of Sherman would cause Provena to lose $8 million or more annually. Other reports concluded the move would affect patients' access to Sherman and negatively impact the ability of emergency responders to transport patients from east Elgin to Sherman's proposed new location in west Elgin.

The Board considered the application at a meeting on March 14, 2006. The Board members discussed area bed needs, the suitability of alternate locations, the infeasibility of renovating Sherman's existing facility, and the impact of the proposed project on Provena. The Board also considered the State Agency Report (SAR) prepared by the Illinois Department of Public Health, which provides staff assistance to the Board. The Department reviewed Sherman's application for compliance with the

3

general review criteria set out in the State regulations. It found the proposed project "did not appear to be in conformance" with 7 of the 21 review criteria related to establishment of the new hospital in part 1110 of the regulations. 77 Ill. Adm. Code § 1110 (2003). It found conformance with the nine financial and economic feasibility provisions in part 1120 of the regulations. 77 Ill. Adm. Code § 1120 (2003).

Following the Board meeting, Sherman requested a deferral of its application to address questions raised by Provena and by the Board. Sherman's representatives met with Department staff on April 5, 2006, for technical assistance. Sherman submitted a letter summarizing the discussions and proposed a reduction in the number of beds from 263 to 255. The new total included 189 medical/surgical beds, 8 pediatric beds, 28 obstetric beds, and 30 intensive care beds. Both Sherman and Provena submitted additional reports addressing the project's financial impact on Provena. The Department submitted a supplemental report to the Board but did not change its finding that the proposed project did not appear to be in conformance with 7 of the 21 review criteria for establishment of a new hospital in part 1110 of the regulations.

At its next meeting on June 7, 2006, the Board voted 3-0 to approve Sherman's application. On June 15, 2006, the Board issued a letter to Sherman, stating it approved the permit based

on the "project's substantial conformance with the applicable standards and criteria of Part 1110 and 1120." The Board noted it considered the Department's findings, the application materials, the public hearing report, and the testimony before the Board. It stated the project must be obligated by December 7, 2007, and completed by June 30, 2010.

Provena filed its complaint for administrative review on July 13, 2006. Its standing was based on section 11 of the Act, which allows any person who is adversely affected by a final decision of the Board to seek judicial review of the Board's decision. 20 ILCS 3960/11 (West 2004). Provena contended the Board's decision to award Sherman a permit would reduce Provena's net income by $8.7 million to $17.7 million per year and potentially cause the closure of St. Joseph Hospital. Provena noted it had begun a $97 million expansion and modernization project that had been approved by the Board in August 2005.

The circuit court remanded the matter for the Board to explain its decision to grant the permit to Sherman "notwithstanding noncompliance with seven of the eight pertinent regulatory criteria as reflected in the State Agency Reports." The court ordered the permit would remain "in full force and effect."

Provena filed a request that the Board consider additional information, conduct further proceedings, and reconsider its

grant of a permit, in light of data that Sherman's average daily census of medical/surgical patients dropped from 137.6 in 2004 to 117.2 in 2005. In approving the project, the Board had relied on Sherman's projections that its average daily census of medical/surgical patients would increase from 137.6 in 2004 to 159.8 in 2011, which would support 188 medical/surgical beds at an 85% utilization rate.

At a Board meeting on December 21, 2006, Chairperson Lopatka read into the record a detailed statement explaining the Board's reasons for granting the permit. The Board voted to adopt the statement.

On March 19, 2007, the circuit court remanded the matter to the Board to determine whether it wished to consider Provena's submission of information about Sherman's 2005 utilization rates or updated ratings by a bond-rating agency. At its meeting on March 27, 2007, the Board acknowledged having read the materials and directed its staff to consider whether Sherman should have submitted the information. On May 2, 2007, the Department informed the Board that Sherman had complied with the rules on the submission of data and there was no evidence Sherman had concealed any information. The Board voted not to revisit its decision or pursue further proceedings.

On July 5, 2007, the circuit court issued a memorandum order and final decision affirming the Board's issuance of the permit.

1-07-1952

Provena filed a timely notice of appeal.

DECISION

I. Review of Board's Decision

On review, an administrative agency's factual findings are considered to be prima facie true and correct. 735 ILCS 5/3-110 (West 2004); Dimensions Medical Center, Ltd. v. Suburban Endoscopy Center, 298 Ill. App. 3d 93, 99, 697 N.E.2d 1231 (1998); Springwood Associates v. Health Facilities Planning Board, 269 Ill. App. 3d 944, 947, 646 N.E.2d 1374 (1995).

We believe this case presents mixed questions of law and fact. A mixed question of law and fact "involves an examination of the legal effect of a given set of facts." City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 205, 692 N.E.2d 295 (1998). The Board's decision is, in part, factual because it involves deciding whether the facts support the issuance of a permit to Sherman. The Board also had to determine the legal effect of its regulations and resolve the potential conflict between the statute and the regulations. Accordingly, we apply a clearly erroneous standard of review. City of Belvidere, 181 Ill. 2d at 205.

Under this standard, while the agency's decision is accorded deference, a reviewing court will reverse the decision where there is evidence supporting reversal and the court "is left with the definite and firm conviction that a mistake has been

1-07-1952

committed." AFM Messenger Service, Inc. v. Department of Employment Security, 198 Ill. 2d 380, 393, 763 N.E.2d 272 (2001), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 92 L. Ed. 2d 746, 766, 68 S. Ct. 525, 542 (1948). We review the decision of the Board, not that of the circuit court. Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance, 372 Ill. App. 3d 24, 31, 864 N.E.2d 798 (2007).

The purpose of the Act is "to establish a procedure designed to reverse the trends of increasing costs of health care resulting from unnecessary construction or modification of health care facilities." 20 ILCS 3960/2 (West 2004). Under the Act, no person may construct, modify, or establish a health care facility without first obtaining a permit or exemption from the Board. 20 ILCS 3960/5 (West 2004).

The Board has the power to prescribe rules and regulations to carry out the purpose of the Act and to develop criteria and standards for health care facilities planning. 20 ILCS 3960/12(1),(4) (West 2004). The Department shall "review applications for permits and exemptions in accordance with the standards, criteria, and plans of need established by the State Board under this Act and certify its finding to the State Board." 20 ILCS 3960/12.2(1) (West 2004). As the CON applicant, Sherman has the burden of proof on all issues pertaining to its

8

1-07-1952

application.  77 Ill. Adm. Code § 1130.130(a) (2006).

The Board is to approve and authorize the issuance of a permit if it finds (1) the applicant is fit, willing, and able to provide a proper standard of health care service for the community, (2) economic feasibility is demonstrated, (3) safeguards are provided assuring that the establishment or construction of the health care facility is consistent with the public interest, and (4) the proposed project is consistent with the orderly and economic development of such facilities and equipment and is <u>in accord with standards, criteria, or plans of need adopted and approved pursuant to the provisions of Section 12 of this Act</u>.  (Emphasis added.)  20 ILCS 3960/6(d) (West 2004).

Provena contends the Board's decision was clearly erroneous because the Board ignored the Department's findings that the application did not conform to seven criteria.[1]  Those criteria contain mandatory language--<u>i.e.</u>, "shall not exceed *** unless" "must document,"--which Provena says the Board was bound to follow.

In its two reports, the Department found the proposed

---

[1]Provena refers to seven of eight "pertinent criteria."  We cannot tell which eight criteria Provena considers to be "pertinent."  However, the Department found Sherman met 14 criteria in part 1110 and failed to meet 7 criteria.  Provena cites no authority to support the contention that one criterion is more pertinent than any other.

9

project did "not appear to be in conformance" with seven review criteria for the establishment of a new hospital.

Under the criterion for allocation of additional beds, the applicant "must document that access to the service will be improved." 77 Ill. Adm. Code § 1110.320(b) (2001). The Department found Sherman was proposing 39 more beds than the historical utilization would justify. Based on the 2005 data, 216 beds were needed to reduce the applicant to the Board's target occupancy, 39 fewer beds than the 255 beds proposed by Sherman.

Under section 1110.530(a)(3), the minimum size for a pediatric unit is 16 beds, 8 more beds than the 8 beds proposed by Sherman. 77 Ill. Adm. Code § 1110.530(a)(3) (2001).

Under the criterion for variances to bed need, an applicant (1) "must document that the applicant facility has experienced high occupancy," (2) "must also document that the number of beds proposed will not exceed the number needed to reduce the facility's high occupancy to the target occupancy," and (3) "must also demonstrate that the proposed number of beds will not exceed the number of beds needed to meet the target occupancy rate over the next 5 years." 77 Ill. Adm. Code § 1110.530(b)(1) (2001). The Department found the historical utilization for the prior 24 months was 40.5% for medical/surgical beds, below the target occupancy of 85%, and 59% for ICU beds, below the target

10

1-07-1952

occupancy of 60%.

Under the location criterion, an applicant "must document" (1) that the primary purpose of the project will be to provide care to the residents of the planning area, and (2) that the location of the project will not create a maldistribution of beds and services. 77 Ill. Adm. Code § 1110.230(a) (2003). The Department found the number of beds in excess of the Board's target occupancy "appears to maintain a maldistribution to care and is not necessary to improve or maintain access."

In its Supplemental Report, the Department addressed the location criterion in reference to the Deloitte report submitted by Provena:

> "The State Agency reviewed the Deloitte Study and notes it is possible that patients currently served by PSJH could find it more convenient to utilize the proposed Sherman facility. It is also true, as stated by the applicants, that the old campus will be used as a portal for the new hospital. However, the State Agency finds it compelling to note that both hospitals have operated in close proximity to each other for over 100 years without financial disaster. It is also true that 37% of the patient days generated at

11

[St. Joseph] are for services that Sherman Hospital does not provide (based on 2004 profile data). It also appears that it would take changes in physician patient relationships to cause the changes envisioned by the Deloitte report. Finally, the State Agency notes it is not the responsibility of the State Board to maintain market share of individual providers. However, it is the State Board's purview to determine whether access for the residents of the planning area will be improved by the proposed new construction."

Under the criterion for alternatives to the proposed project, an applicant "must document" that the proposed project is the most effective or least costly alternative. 77 Ill. Adm. Code § 1110.230(c) (2003). The Department found, even with the reduction in proposed beds from 263 to 255, "[i]t still appears that a smaller hospital and a smaller number of beds would be a better choice than the alternative proposed."

Under the criterion for need for the project, "[i]f the State Board has determined need pursuant to Part 1100, the proposed project shall not exceed additional need determined unless the applicant meets the criterion for a variance." 77

Ill. Adm. Code § 1110.230(d)(1) (2003).  If the Board has not determined need, "the applicant must document that it will serve a population group in need of the services proposed and that insufficient service exists to meet the need."  77 Ill. Adm. Code § 1110.230(d)(2) (2003).  The Department found the applicants were unsuccessful in addressing the variances to bed-need because the historical utilization was below the target occupancy for the prior 24 months.  Using the 2.3% annual growth factor submitted by Sherman indicated a need for 6 fewer beds in 2012 (the second full year after project completion) than what was proposed. While the Department found Sherman did not meet this criterion, the Board is not bound by the Department's findings.  Cathedral Rock of Granite City, Inc. v. Illinois Health Facilities Planning Board, 308 Ill. App. 3d 529, 543, 720 N.E.2d 1113 (1999).

Under the project size criterion, the applicant "must document" that the size of a proposed project is appropriate, and utilization will meet or exceed the Board's standards by the second year of operation.  77 Ill. Adm. Code § 1110.230(e) (2003).  The department found the proposed project exceeded the size standards for all departments except diagnostic radiology, MRI, nuclear medicine, laboratory, physical therapy, and respiratory therapy, by a total excess of 63,058 gross square feet (GSF).  It found, based on the average inpatient growth of 4.8% for 2000 to 2003, by the second year after project

13

completion, the applicants could justify 300 beds--45 <u>more</u> beds than the 255 beds proposed by Sherman.

At its meeting following the circuit court's first remand, the Board said it reviewed material addressing 21 criteria for the establishment of a new hospital. All the criteria for the establishment of open heart surgery and catheterization, background of the applicant, location, response to the alternative, modernization, and financial and economic feasibility were met. The Board was aware the number of pediatric beds was less than the minimum standard but said that criterion "was reviewed by staff for possible revision." The criterion addressing size of the project was met in 11 of the 17 departments, subject to the standards set in the rules. The criteria for bed need, based on inventory, was met for obstetrics, but not for intensive care, pediatrics, and medical/surgical beds. The Board said, "[t]his was mitigated, however, by full compliance with our criterion regarding the projected utilization of those beds in which the applicant was fully compliant." The proposed total number of beds was reduced from 263 to 255, which fell between the 216 beds calculated under the bed-need formula, and the 299 beds derived from the projected utilization allowed under the size-of-project criterion.

Generally, administrative agencies are bound to follow their own rules as written, without making <u>ad</u> <u>hoc</u> exceptions or

departures.  Springwood, 269 Ill. App. 3d at 948; Albazzaz v. Illinois Department of Professional Regulation, 314 Ill. App. 3d 97, 106, 731 N.E.2d 787 (2000).  However, section 1130.660 of the regulations provides: "[t]he failure of a project to meet one or more review criteria, as set forth in 77 Ill. Adm. Code 1110 and 1120, shall not prohibit the issuance of a permit***."  77 Ill. Adm. Code § 1130.660 (2004).

Provena contends section 1130.660 does not apply, relying on Marion Hospital Corp. v. Illinois Health Facilities Planning Board, 321 Ill. App. 3d 115, 746 N.E.2d 880 (2001) (Marion I), vacated as moot, 201 Ill. 2d 465, 777 N.E.2d 924 (2002).  We note the Marion I decision was vacated as moot by our supreme court and held to be "wholly advisory."  Marion, 201 Ill. 2d at 475. We give it no precedential value.

The majority of courts have held section 1130.660 allows the Board to issue a permit even though a proposed project fails to meet all the applicable review criteria.  This is true even where the applicant fails to comply with a criterion containing "mandatory" language.

In Marion Hospital Corp. v. Illinois Health Facilities Planning Board, 324 Ill. App. 3d 451, 453, 753 N.E.2d 1104 (2001) (Marion II), Marion challenged the Board's approval of the application of Southern Illinois Hospital Services d/b/a Memorial Hospital of Carbondale (Carbondale) for a permit to add open

heart surgery service at its hospital.  The parties agreed Carbondale did not meet the review criterion in section 1110.1230(d), which provides, "[t]he applicant must document that a minimum of 200 open heart surgical procedures will be performed during the second year of operation or that 750 cardiac catheterizations were performed in the latest 12 month period for which data is available."  (Emphasis added.)  77 Ill. Adm. Code § 1110.1230(b) (1998); Marion II, 324 Ill. App. 3d at 453.

Marion contended the Board's actions were arbitrary and capricious because it did not follow its own mandatory regulation when it approved Carbondale's application.  Marion II, 324 Ill. App. 3d at 455.  The court held it must read section 1110.230(b) in conjunction with section 1130.660, which unambiguously states that the failure to satisfy one or more of the criteria in part 1110 shall not prevent the issuance of a permit.  Marion II, 324 Ill. App. 3d at 456.  The court affirmed the Board's approval of Carbondale's permit application, finding:

> "Although Carbondale's application did not
> meet all of the review criteria, section
> 1130.660 gives the Board the authority to
> issue a permit.  It is a necessary function
> of the Board that it have the discretion to
> make these types of decisions.  It cannot be
> said that the legislature intended for

16

patients to leave the State in order to receive necessary medical treatment. Here, section 1130.660 gives the Board the necessary discretion to bring much needed medical services to a part of the state that would otherwise have to do without those services." Marion II, 324 Ill. App. 3d at 457.

In Dimensions, 298 Ill. App. 3d at 102, the objecting hospitals argued the Board erred when it approved the application where certain review criteria had not been met. Three necessary criteria were found unmet by both the Department and the circuit court, including sections 1110.230(f) and 1110.1540(e), requiring that the "applicant must" perform a certain action. Dimensions, 298 Ill. App. 3d at 102. The court held section 1130.660 gave the Board the authority to approve an application where one or more review criteria were not met. Dimensions, 298 Ill. App. 3d at 102.

See also Cathedral Rock, 308 Ill. App. 3d at 544 (section 1130.660 allowed Board to grant permit where applicant met 15 of 18 review criteria); Access Center For Health, Ltd. v. Health Facilities Planning Board, 283 Ill. App. 3d 227, 236, 239, 669 N.E.2d 668 (1996) (applicant's failure to comply with 3 of 13 review criteria in section 1110 could be excused by the Board

17

pursuant to section 1130.660). But see <u>Springwood</u>, 269 Ill. App. 3d at 950 (court held Board's action was arbitrary for failing to follow its own regulations, but did not consider section 1130.660).

Provena does not contend section 1130.660 is invalid. Rather, it says the regulation must be read together with sections 6(d) and 12 of the Act, and, to the extent there is a conflict, the statutory provisions must control.

Provena contends the Board erred in failing to find Sherman's project was "in accord" with the criteria in the regulations, according to the language in section 6(d) of the Act. 20 ILCS 3960/6(d) (West 2004). Instead, the Board's letter issuing the permit indicated the project's "substantial conformance" with the applicable standards and criteria.

First, this court has considered and rejected the contention that the Board is required to make specific written findings when it issues a permit. In <u>Charter Medical of Cook County v. HCA Health Services of Midwest, Inc.</u>, 185 Ill. App. 3d 983, 991, 542 N.E.2d 82 (1989), the permit letters stated that the Board considered the Department's report, the application materials, and the applicant's testimony. The letters stated the Board's approval was "based on the project's substantial conformance with the applicable standards and criteria," and that "the applicants had documented and justified the need to establish freestanding

acute mental health facilities." Charter Medical, 185 Ill. App. 3d at 991. Charter argued the Board failed to make specific findings regarding the application's conformance with the applicable review criteria. The court held the explanation in the letters was sufficient. The regulations did not require a detailed explanation for how and why certain review criteria were applied. Charter Medical, 185 Ill. App. 3d at 991.

The Act and the regulations require the Board to explain its decision and specify its "findings and conclusions" only when it denies an application. Access Center, 283 Ill. App. 3d at 237; 20 ILCS 3960/10 (West 2004); 77 Ill. Adm. Code § 1130.680 (2004). In the transcript of the Board's hearing following the circuit court's first remand, the Board explained how its criteria related to its decision.

Second, Provena contends "substantial conformance" is a less stringent standard than "in accord with" and allows more leeway to stray from pertinent criteria. Neither the statute nor the regulations define the phrase, "in accord with." In the absence of a statutory definition, words are to be given their ordinary and commonly understood meaning. Price v. Philip Morris, Inc., 219 Ill. 2d 182, 243, 848 N.E.2d 1 (1994). The dictionary can be used as a resource to ascertain the ordinary meaning of words. Price, 219 Ill. 2d at 243.

The dictionary defines "substantial" as "consisting of,

relating to, sharing the nature of, or constituting substance," "being that specified to a large degree or in the main," "of or relating to the main part of something." Webster's Third New International Dictionary 2280 (1981).

"Conformance" is "the act of conforming, conformity." "Conformity" is "correspondence in form, manner or character: a point of resemblance (as of tastes)," "harmony, agreement, congruity," the "action or act of conforming to something established (as law or fashion): compliance, acquiescence," or an "action in accordance with some specified standard or authority." Webster's Third New International Dictionary 477 (1981).

"Accord" means "to bring into agreement: reconcile, harmonize," or "to arrive at an agreement: come to terms," or "to be in harmony: be consistent." Webster's Third New International Dictionary 12 (1981).

We hold the Board's decision that the project "substantially conformed" with the criteria was equivalent to finding it was "in accord with" the criteria. The definition of "accord" does not suggest complete compliance. The definitions of "conformity" and "accord" both contain the words "harmony" and "agreement," suggesting a distinction without a difference. In Charter Medical, 185 Ill. App. 3d at 991, the court held the Board's finding of "substantial conformance" with the applicable criteria reasonably complied with the regulations.

We further note that the Illinois legislature has not amended section 6 to require that an applicant completely conform to all of the applicable criteria. The legislature made no change even after Marion II, Dimensions, Cathedral Rock, and Access Center held the Board may grant a permit where the applicant has not met all the criteria. The legislature is presumed to know how courts have interpreted a statute and may amend the statute if it intended a different construction. People ex rel. Dept. of Labor v. Tri State Tours, Inc., 342 Ill. App. 3d 842, 847, 795 N.E.2d 990 (2003).

The Board did not apply an incorrect legal standard in its decision to grant Sherman's application. We find section 1130.660 of the regulations allows the Board to grant a permit application even where the Department has found the proposed project not in conformance with all the pertinent review criteria. Both the Board's adoption of regulations and its interpretations of those regulations are presumptively valid and are entitled to deference. Charter Medical, 185 Ill. App. 3d at 987, 989; Manor Healthcare Corp. v. Northwest Community Hospital, 129 Ill. App. 3d 291, 295-96, 472 N.E.2d 492 (1984).

We now turn to a discussion of whether the Board's decision was clearly erroneous. The record contains substantial evidence supporting the Board's decision to grant the permit. The Department found Sherman's reasons for discontinuation of the old

hospital were valid based on the facility's location and age. The current hospital could not be expanded, and the cost to modernize the facility was cost-prohibitive due to the age of the buildings. Other mechanical and environmental issues could no longer accommodate the workload at the current facility. The Department found the discontinuation of the old facility created a bed-need in the planning area, which would be addressed by the new facility. A representative from the Elgin Fire Department testified the proposed relocation would in no way compromise emergency services and would improve emergency service access for residents of the planning area.

The Department found Sherman met 14 of the general review criteria and all of the economic and financial feasibility criteria. Most of the criteria where Sherman fell short related to bed-need. Sherman proposed reducing the number of beds from 363 at the current facility to 255 at the new facility. See Access Center, 283 Ill. App. 3d at 239-40 (applying section 1130.660 where applicant was not seeking permission to increase the number of beds in its facility; relocation without expansion is different from expansion alone).

Provena contends the Board disregarded the mandatory language in rule 1110.230(d)(1) by allowing 88 more beds than the projected bed-need. See 77 Ill. Adm. Code § 1110.230(d)(1) (2003) ("the proposed project shall not exceed additional need

22

1-07-1952

determined unless the applicant meets the criterion for a variance.")[2]  In the portion of its report discussing the bed-need criterion under section 1110.230(d), the Department found that in 2012, the second full year after project completion, there will be a need for 249 beds, only 6 fewer beds than the 255 beds proposed by Sherman.  As far as the allocation of additional beds criterion in section 1110.320(b), Sherman proposed 39 more beds than the utilization rates would justify.  The Board found the difference to be permissible because the Department projected future utilization rates of up to 299 beds.  The Board found 255 beds was an approximate midpoint between the 216 beds needed to reduce the applicants to the Board's target occupancy, and the 299 beds needed by 2012.

The stated bed-need in a planning area is a projection made by the Department.  It is well settled that the Board is not bound by the Department's findings; it must make its own decision based on the evidence in the record.  Cathedral Rock, 308 Ill. App. 3d at 543; Access Center, 283 Ill. App. 3d at 236.  The stated bed-need in a planning area is a projection; it does not

---

[2]After oral arguments members of this panel received a letter from one of the Sherman Hospital lawyers.  It referred to a document that is not part of the record and it attached that document.  In addition, the letter contained further argument in support of Sherman Hospital's position.  We consider the communication inappropriate and unwarranted.  It was not considered by this Court.

23

create a fixed pool of beds or bind the Board.  <u>Charter Medical</u>,
185 Ill. App. 3d at 988.  The Board has discretion to approve
projects for more beds than present figures might warrant, even
where underutilization exists.  <u>Cathedral Rock</u>, 308 Ill. App. 3d
at 544.

Provena contends the Board ignored the decline in Sherman's
use of medical/surgical beds in 2004 and 2005, including a 15%
drop in 2005 that Sherman failed to disclose.  The record shows
the Board was aware of the figures cited by Provena.  Following
the second remand by the circuit court, Chairperson Lopatka said:

> "Even though the data in 2005 showed fewer
> inpatient admission days, it also showed a
> significant increase in the actual numbers of
> clients who were accepted into med/surgery.
> So there was a change particularly in the
> length of stay, not in the number of people
> who are actually being served by the
> hospital."

In <u>Cathedral Rock</u>, the plaintiff nursing care facility
contended the Board failed to consider more recent 1995 data on
bed need in the area, erroneously finding an 80-need bed existed,
when the need was only for 52 beds.  The court held the Board's
decision was not arbitrary or capricious because the record
showed the Board "was keenly aware of the discrepancy in the

numbers and understood that it was a dilemma it needed to resolve." Cathedral Rock, 308 Ill. App. 3d at 544.

Provena urges this court to find its interpretation of the data and evidence is more correct than the Board's. We decline to do so. It is not this court's function to reweigh the evidence; our review is limited to determining whether the Board's decision is clearly erroneous. Charter Medical, 185 Ill. App. 3d at 990. "The mere fact that an opposite conclusion is reasonable or that a reviewing court might have ruled differently will not justify reversal of the administrative findings." Cathedral Rock, 308 Ill. App. 3d at 545.

With regard to the impact of Sherman's project on Provena, the location of the new hospital is the same distance from Provena as the old hospital. The Department noted that 37% of the patient days generated at Provena were for services not provided by Sherman. The dire consequences envisioned by Provena's Deloitte study did not take into account the likelihood of changes in physician-patient relationships and third-party coverage.

We reject Provena's contention that the Board failed to hear the testimony of key witnesses for Provena and ignored the adverse impact on Provena. It is not the Board's responsibility to protect market share of individual providers. See Cathedral Rock, 308 Ill. App. 3d at 540. Nor does the Planning Act protect

jobs. American Federation of State, County & Municipal Employees, Council 31 v. Ryan, 347 Ill. App. 3d 732, 741, 807 N.E.2d 1235 (2004).

The Board is required to consider the impact on another provider only insofar as it affects "total health care expenditures in the facility and community," that construction is "consistent with the public interest," and the project is "consistent with the orderly and economic development of such facilities." 20 ILCS 3960/6(d) (West 2004). The Board stated on the record that it considered whether the financial impact on Provena would affect the public's access to health care, cost of health care, visibility of services, and avoidance of unnecessary duplicative services. It was not required to consider the effect on Provena's market share or profitability. To the extent that Provena contends we should consider the impact on its own $97 million modernization project, the Act does not allow "comparative review" of CON applications. Access Center, 283 Ill. App. 3d at 240.

In response to Provena's contention that the Board erred in failing to hear live testimony of Provena's witnesses, the Act and the regulations require only that interested parties have the opportunity to attend a public hearing and make written submissions. 20 ILCS 3960/8 (West 2004); 77 Ill. Adm. Code §§ 1130.620, 1130.630 (2005). Provena had that opportunity. Only

26

when an application is <u>denied</u> may the <u>applicant</u> choose to have an administrative hearing in front of a hearing officer. (Emphasis added.) 20 ILCS 3960/10 (West 2004); 77 Ill. Adm. Code § 1130.680 (2005). Provena was not the applicant, and the application was not denied. Provena has no protectible right or constitutional interest to maintain its market share or to be shielded from competition. <u>Cathedral Rock</u>, 308 Ill. App. 3d at 539-40. "While plaintiff's market share may have been adversely affected by the Board's decision, plaintiff's interest in such share is certainly not akin to the types of property interests entitled to due process protections." <u>Cathedral Rock</u>, 308 Ill. App. 3d at 540.

Provena was given a meaningful opportunity to present its case under the Act and the regulations. Provena presented testimony at the public hearing, submitted written materials, and sought judicial review of the Board's decision. The Board took into account the impact on Provena in deciding to grant the permit. To allow a party adversely affected by a permit greater participation opportunities "would risk unnecessarily prolonging and complicating the CON application process." <u>Cathedral Rock</u>, 308 Ill. App. 3d at 541.

Finally, based on the extensive evidence in the record, we hold the Board's finding that Sherman's proposed project was the most effective or least costly alternative was not clearly erroneous.

II. Ex Parte Communication

Provena contends the April 2006 "technical assistance meeting" attended by Sherman representatives, Department personnel, and members of the Board, was a prohibited ex parte communication in violation of the Act. 20 ILCS 3960/4.2 (West 2004). Section 4.2 of the Act prohibits the Board, any Board member, employee, or hearing officer from engaging in ex parte communication "in connection with the substance of any pending or impending application for a permit with any person or party or the representative of any party." 20 ILCS 3960/4.2 (West 2004).

Sherman submitted into the record a Technical Assistance Letter dated April 17, 2006, from Sherman Hospital to the Board. The letter states its purpose as documenting technical assistance provided by Department staff at a meeting on Wednesday, April 5, 2006. At the meeting, according to Sherman, Department staff identified five areas for further explanation or clarification by Sherman: (1) anticipated components of the campus at the site of the old hospital; (2) clarification of the number of rooms in ancillary departments; (3) additional justification for number of inpatient beds; (4) physical access to proposed location; and (5) financial impact on Provena.

Provena contends the lack of a transcript or minutes of the April 2006 meeting violated the rules and led the Board to believe it could not consider the impact of Sherman's project on

28

Provena unless it was severe enough to drive Provena out of business. Provena contends the Board failed to take action to ensure the ex parte violation did not "prejudice any party or adversely affect the fairness of the proceedings." 20 ILCS 3960/4.2(f) (West 2004).

Provena forfeited this issue by failing to raise it before the Board. Provena was aware of the meeting and made no objection to the meeting in the proceedings below. Moreover, William Brown, St. Joseph's president and CEO, referred to the meeting as involving "technical assistance" and did not suggest the meeting constituted a prohibited ex parte communication. Where a party fails to assert a particular argument before an administrative agency, the point is forfeited and should not be considered on appeal. Access Center, 283 Ill. App. 3d at 238-39.

If the issue were not forfeited, we would find it lacks merit. The Board's rules contemplate the type of technical assistance provided in this case. "Technical assistance with respect to an application, not intended to influence any decision on the application, may be provided by [Department] employees to the applicant. Any assistance shall be documented in writing by the applicant and employees within 10 business days after the assistance is provided." 2 Ill. Adm. Code § 1925.293(g) (2001). Sherman's letter complies with the requirements of section 1925.293(g). The letter merely documents and lists specific

areas for which Sherman needed to provide additional clarification and information to the Board.

III. Mootness

The State contends Provena's appeal is moot because Sherman has begun construction of the new hospital and has spent $29 million in capital expenditures.  See Marion, 201 Ill. 2d at 472. Sherman does not make the same argument in its brief.  Because no stay of the CON was ordered, Sherman broke ground on June 27, 2006, several weeks after the Board granted the permit.

"[W]hen the resolution of a question of law cannot affect the result of a case as to the parties, or when events have occurred which make it impossible for the reviewing court to render effectual relief, a case is rendered moot."  Marion, 201 Ill. 2d at 471.

In Marion, 201 Ill. 2d at 472, at the time the appellate court filed its opinion, the ambulatory surgical treatment center at issue had been built and the capital earmarked for the project had been spent.  The capital expenditure had been made and could not be undone.  Because the Board has no oversight of a medical facility's operations once it has been built (20 ILCS 3960/5 (West 1998)), any question concerning the propriety of that expenditure--the issue addressed by the permit application process--was moot.  Marion, 201 Ill. 2d at 472.  In addition, the defendant had obtained an operating license for the ASTC, and a

valid permit was not required to obtain a renewal license. Marion, 201 Ill. 2d at 474-75. The supreme court vacated the appellate decision as moot. Marion, 201 Ill. 2d at 475-76.

The State relies on the definition of a capital expenditure in section 3 of the Act--an expenditure made by a health care facility which exceeds the "capital expenditure minimum" of $6 million, adjusted for inflation. 20 ILCS 3960/3 (West 2004). Because Sherman has spent more than the $6 million minimum, the State contends, it has spent the "capital expenditure" referenced in the Marion supreme court opinion.

The appeal is not moot. According to the State, Sherman has spent $29 million of the approximately $310 million earmarked for the project. Unlike the applicant in Marion, Sherman has not spent its total capital expenditure. The resolution of this appeal will directly affect the parties. If we were to reverse the Board's decision, Sherman would not be allowed to proceed with construction of the project or to obtain an operating license without a valid permit. Furthermore, both remand orders by the circuit court stated further expenditures made by Sherman were "at Sherman's risk" and could not be used as arguments against setting aside the CON.

CONCLUSION

We affirm the circuit court's order affirming the Board's decision to grant a CON to Sherman. Provena forfeited its

1-07-1952

contention regarding the alleged <u>ex</u> <u>parte</u> communication between

Sherman and the Board.  This appeal is not moot.

Affirmed.

CAHILL, P.J., and R. GORDON, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please use following form:<br><br>Complete<br>TITLE<br>of Case | PROVENA HEALTH and PROVENA HOSPITALS,<br><br>        Plaintiffs-Appellants,<br><br>             v.<br><br>ILLINOIS HEALTH FACILITIES PLANNING BOARD, ILLINOIS DEPARTMENT OF PUBLIC HEALTH, SHERMAN HOSPITAL, SHERMAN HEALTH SYSTEMS, and REEVEN J. ELFMAN,<br><br>        Defendants-Appellees. |
| Docket Nos.<br><br>COURT<br><br>Opinion<br>Filed | No. 1-07-1952<br><br>Appellate Court of Illinois<br>First District, 1st Division<br><br>March 31, 2008 |
| JUSTICES | JUSTICE WOLFSON delivered the Opinion of the court:<br><br>CAHILL, P.J., and R. GORDON, J., concur. |
| APPEAL from the Circuit Court of Cook County; the Hon._____,<br>Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>    Appeal from the Circuit Court of Cook County.<br><br>    The Hon. Peter J. Flynn, Judge Presiding. |
| For APPELLANTS,<br>John Doe, of Chicago.<br><br>For APPELLEES,<br>Smith and Smith, of Chicago.<br><br>(Joseph Brown, of counsel).<br><br>Also add attorneys for third-party appellants and/or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br>For Plaintiffs-Appellants Provena Health and Provena Hospitals: Jeffrey R. Ladd, James W. Collins, and Lawrence M. Gavin, BELL, BOYD & LLOYD LLP, of Chicago.<br><br>For Defendants-Appellees Sherman Hospital, Sherman Health Systems and Reeven J. Elfman: Richard T. Greenberg, Kara M. Friedman, Jeffrey C. Clark and Kelly A. Morgan, McGUIRE WOODS LLP, of Chicago.<br><br>For Defendants-Appellees Illinois Health Facilities Planning Board and Illinois Department of Public Health: Lisa Madigan, Attorney General for the State of Illinois, Michael A. Scodro, Solicitor General and Evan Siegel, Assistant Attorney General, of Chicago.<br><br>    (USE REVERSE SIDE IF NEEDED) |